## Richmond

L<span>INWOOD</span> E<span>ARL</span> B<span>RILEY</span>

V.

C<span>OMMONWEALTH OF</span> V<span>IRGINIA</span>

June 12, 1981.

Record No. 800558

Present: All the Justices.

*Melvin R. Hughes (Craig S. Cooley; Chambliss, Cunningham, Hughes & MacBeth; Brown, Bruner & Cooley,* on brief), for appellant.

*Richard B. Smith, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

Linwood Earl Briley was convicted by a jury on all counts of an indictment charging rape, robbery, three counts of first degree murder, and five counts of use of a firearm. Confirming the verdict, the trial court entered final judgment January 12, 1980 fixing punishment at five life sentences for the rape, robbery, and murder convictions and five one-year sentences for the firearm convictions.

We granted an appeal to consider the defendant's contention that he had been denied trial by an impartial jury because the trial court had seated two veniremen he had challenged for cause.[1]

The trial court conducted a comprehensive collective *voir dire* and then permitted counsel on both sides to examine the veniremen individually. Herman Bradby and Wellford Haddon had read and heard extensive news accounts of the crimes. Defense counsel

---

[1] Both were stricken by peremptory challenge, but the fact that they did not serve on the jury which convicted the defendant is irrelevant to the issue framed on appeal. *See Breeden v. Commonwealth* 217 Va. 297, 300, 227 S.E. 2d 734, 736-37 (1976); *Dowdy v. Commonwealth*, 50 Va. (9 Gratt.) 727, 737 (1852).

asked Bradby if he believed the defendant was guilty; Bradby replied, "I really couldn't . . . say my opinion but right now my opinion is that he is guilty . . . but I can't really say until I hear the case." Paraphrasing Bradby's language, counsel restated the question, and Bradby said, "That's right."

Haddon was asked if he had "formed any opinion at this point as to guilt or innocence of the defendant". Haddon answered, "Well, I think it looks pretty bad for him . . . from what I've seen and read in the paper, I mean it—I wouldn't judge it on that basis but it looks pretty bad, I think." Pressed to clarify that statement, Haddon added, "Well, I can't see how all of the information that has been given in the papers and its gone through the Grand Jury and has gotten to this point if there wasn't some guilt there." Pursuing that response, defense counsel asked Haddon if he believed that the defendant could have "gotten to this point and not be guilty of these crimes". Haddon said, "I think that's possible, yes", but he thought it was not "likely".

Relying solely upon these questions and answers, the defendant insists that Bradby and Haddon made a "pre-determination of guilt" and, accordingly, were unqualified to sit on the panel. But these brief excerpts, selected at random from lengthy dialogues, must be read in context with the entire transcript of the *voir dire*. Responses to questions posed by the trial judge and the Commonwealth's Attorney reveal that Bradby and Haddon acknowledged that they understood that the defendant was presumed to be innocent, that the Commonwealth bore the burden of proving guilt beyond a reasonable doubt, that the defendant bore no evidentiary burden, and that the jury was required by its oath to abide by the court's instructions and base its verdict upon the evidence adduced at trial without consideration of any information acquired from extrajudicial sources. Asked if they had formed a final opinion from what they had learned from news stories, Bradby said, "Oh, no, no absolute opinion", and Haddon said, "No, no absolute opinion, no."

■ Mere assent to questions phrased by the Commonwealth to suggest a particular response is not sufficient, standing alone, to qualify a prospective juror. *See Parsons* v. *Commonwealth,* 138 Va. 764, 773, 121 S.E. 68, 70 (1924); *accord, Breeden* v. *Commonwealth,* 217 Va. 297, 300, 227 S.E.2d 734, 736 (1976). So, we consider additional dialogue found in the transcript of the *voir dire* conducted by defense counsel. Quite properly, counsel's ques-

tions were designed to probe the nature and strength of any seeming predisposition to find the accused guilty:

Q   Mr. Bradby, is it your understanding and belief that a man is presumed innocent until he's proven guilty?

A   That's right.

Q   Do you believe that this man who is seated beside me could be charged with the particular crimes he's charged with and be before this Court and be innocent?

A   Well, he could be.

. . .

Q   Mr. Bradby, have you as an individual made a determination as to guilt or innocence of this defendant based on your reading or hearing or seeing news coverage?

A   No, I haven't.

Q   Have you as a result had any discussions with neighbors or have other members of the community formed any opinion as to guilt or innocence?

A   No.

. . .

Q   So the fact that the defendant is charged with rape, would that have any effect upon your ability to render a fair decision in this trial?

A   I render whatever what's right—I think what's right, that's what I would render.

Q   All right, sir, if the accusation made against the defendant in this charge—on these charges included a charge of robbery in which a young lady was killed, would you have . . . . . motive to convict any defendant on that type of charge?

A   Not until after I hear the case.

Q   Would you feel subjectively in your own opinion, that you would be more likely to convict the defendant on less evidence for that type of charge than you would for some other type of an offense?

A   No.

Q   What if the accusation against the particular defendant included a charge of participating in a robbery in which a young child was killed, would that have any effect upon you?

Q All right, I appreciate your candor, you're under oath and my question to you is, have you at this point made a determination as—in your own mind whether you think Mr. Briley is guilty or is he innocent?

A Yes, it would.
Q Would you have any desire or would you feel that you would be more likely to render a conviction on less evidence in that type of charge?
A No.

. . .

Q Mr. Bradby, do you understand that the defendant does not have to prove anything?
A I understand.

Defense counsel's questions of Haddon were also intended to demonstrate that he had prejudged the case:

Q All right, I appreciate your candor, you're under oath and my question to you is, have you at this point made a determination as—in your own mind whether you think Mr. Briley is guilty or is he innocent?
A Oh, no.

. . .

Q Mr. Haddon, do you really feel like you can within your own conscience, displace and ignore the opinion that you've reached at this point that he's probably guilty or likely to be guilty if it's gotten this far, do you really feel like you can do that?
A (No response)
Q I know you would make every honest effort if the Judge charged you to do that, but I'm asking you could you—do you feel like subjectively that you could really do that?
A Yes, I think so.

■ Every person accused of committing a crime has a constitutional right to trial by "an impartial jury". U.S. Const. amends. VI and XIV; Va. Const. art. I, § 8. Bradby and Haddon acknowledged that they had formed an opinion from what they had read and heard in news accounts. The defendant asserts that such a person can never qualify as an impartial juror. We do not agree.

"The theory of the law is that a juror who has formed an opinion cannot be impartial. Every opinion which he may entertain need not necessarily have that effect. In these days of

newspaper enterprise and universal education, every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits. It is clear, therefore, that upon the trial of the issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality."

*Reynolds* v. *United States,* 98 U.S. 145, 155-56 (1878).

Hence, in deciding whether a venireman who has formed an opinion is constitutionally impartial, courts must "determine . . . the nature and strength of the opinion formed." The spectrum of opinion can range, by infinite shades and degrees, from a casual impression to a fixed and abiding conviction. The point at which an impression too weak to warp the judgment ends and one too strong to suppress begins is difficult to discern. *See Armistead's Case,* 38 Va. (11 Leigh) 657 (1841). "The question thus presented is one of mixed law and fact, and . . . [t]he finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest." *Reynolds* at 156; *accord, Holt* v. *United States,* 218 U.S. 245 (1910); *Spies* v. *Illinois,* 123 U.S. 131 (1887); *Hopt* v. *Utah,* 120 U.S. 430 (1887). *See also Martin* v. *Commonwealth,* 221 Va. 436, 445, 271 S.E.2d 123, 129 (1980); *Waye* v. *Commonwealth,* 219 Va. 683, 690, 251 S.E.2d 202, 206-07, *cert. denied,* 442 U.S. 924 (1979); *McCue's Case,* 103 Va. 870, 993, 49 S.E. 623, 625 (1905).

■ Historically, courts confronted with the issue have looked for guidance to the words of Chief Justice John Marshall: "[L]ight impressions which may fairly be supposed to yield to the testimony that may be offered; which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror . . . ." 1 D. Robertson, *Reports of the Trials of Colonel Aaron Burr,* 416 (1808). Quoting these words and borrowing from the reasoning in *Reynolds,* the Supreme Court has refined the rule to be applied when a prospective juror has formed an opinion:

"In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. (Citations omitted.)"[2]

*Irvin* v. *Dowd,* 366 U.S. 717, 722-23 (1961).

The facts and issues in the case at bar are similar to those in the case of *Murphy* v. *Florida,* 421 U.S. 794 (1975). There a prospective juror acknowledged on *voir dire* that what he was "saying" was, "My experience of [the accused] is such that right now I would find him guilty." *Id.* at 802, n. 5. The venireman was seated, and on appeal the petitioner contended that he had been denied a fair trial because the juror had formed an opinion. Noting certain "indicia of impartiality" elsewhere in the *voir dire, id.* at 802, Mr. Justice Marshall quoted and applied the rule in *Irvin* and held that "we are unable to conclude . . . that petitioner did not receive a fair trial," *id.* at 803.

Here, the defendant bases his plea for reversal upon three recent decisions of this Court. In *Breeden* v. *Commonwealth, supra,* we held that a venireman who persisted in the opinion that the accused had the burden of proving his own innocence was not impartial. In *Justus* v. *Commonwealth,* 220 Va. 971, 266 S.E.2d 87 (1980), we reversed a conviction because a venireman's opinion "of defendant's probable guilt was such . . . that if no evidence was forthcoming from him, that opinion would persist." *Id.* at 977, 266 S.E.2d at 91. And in *Martin* v. *Commonwealth,* 221 Va. 436, 271 S.E.2d 123 (1980), where a venireman stated and twice

---

[2] The language defining this rule has many antecedents in the opinions of this Court. *See e.g., Abdell* v. *Commonwealth,* 173 Va. 458, 2 S.E.2d 293 (1939); *Cox* v. *Commonwealth,* 157 Va. 900, 162 S.E. 178 (1932); *Ballard* v. *Commonwealth,* 156 Va. 980, 159 S.E. 222 (1931); *Robinson* v. *Commonwealth,* 104 Va. 888, 52 S.E. 690 (1906); *McCue's Case, supra.*

repeated the belief that the defendant was required to prove that he did not commit the crimes charged against him, we held that the defendant had been denied his right to an impartial jury.

The defendant's reliance on these cases is misplaced. In each, the transcript showed that, notwithstanding predictable responses to the Commonwealth's suggestive questions, the prospective juror remained committed to the opinion that the defendant was guilty until he proved himself innocent. Here, while the two veniremen candidly conceded that news stories and the grand jury's indictment had led them to think the defendant was guilty, they repeatedly resisted the vigorous efforts of defense counsel to show that they did not understand or accept the presumption of innocence or the rules governing burden of proof. Moreover, with emphatic language, both declared that they had formed "no absolute opinion".[3] Obviously, the trial judge concluded that their "opinions" were no more than transient impressions and that each was able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin* v. *Dowd, supra.*

While we reaffirm the principle underlying our decisions in *Breeden, Justus,* and *Martin* that any substantial doubt as to the impartiality of a prospective juror should be resolved in favor of an accused, we cannot say on this record that the conclusion reached by the trial judge was manifest error, *Reynolds* v. *United States, supra,* and the judgment will be affirmed.

*Affirmed.*

---

[3] "[T]he trial court must weigh the meaning of the answers given in light of the phrasing of the questions posed, the inflections, tone, and tenor of the dialogue, and the general demeanor of the prospective juror." *Smith* v. *Commonwealth,* 219 Va. 455, 464-65, 248 S.E.2d 135, 141, *cert. denied,* 441 U.S. 967 (1979).