COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia

RUSSELL HOPSON

                                                            OPINION BY
v.      Record No. 1099-07-1                       JUDGE D. ARTHUR KELSEY
                                                            JUNE 10, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

Charles E. Haden for appellant.

Virginia B. Theisen, Senior Assistant Attorney General
(Robert F. McDonnell, Attorney General, on brief), for
appellee.


A jury convicted Russell Hopson of voluntary manslaughter.  On appeal, Hopson argues

that his conviction should be overturned because the trial court erroneously failed to strike

several jurors for cause during voir dire.  We disagree and affirm Hopson's conviction.


I.

At the start of Hopson's trial, the trial court questioned the jury venire on various subjects

to ensure the prospective jurors would approach the case from an impartial point of view.

Among other questions, the trial court asked:  "Do each of you understand that the defendant is

presumed to be innocent?"  "Do you understand that the Commonwealth must prove the

defendant's guilt beyond a reasonable doubt?"  "Do you understand that the defendant is not

required to produce evidence?"  To each of these questions, the venire panel responded

affirmatively.

When given his opportunity to question the venire, Hopson's counsel posed a series of

subtle questions related to the presumption of innocence.  He began in this manner:  "The first

question I'd like to ask is right to the point, I think. Does everybody agree that we haven't heard any evidence? Can you raise your hand if you agree to that." The jury responded in agreement. From there, counsel stated: "Haven't heard no evidence. Do you think Mr. Hopson is guilty or not guilty? There's three answers that you can have. I think he's guilty or he's charged, so he's guilty. I think he's not guilty. I don't know. Can you raise your hand if your answer is I don't know." The venire panel responded affirmatively.

Hopson's counsel then told the prospective jurors, "it can't be I don't know. The answer to the Judge's question, truthfully, it's got to be presumed not guilty. Not I don't know." Continuing, counsel said, "having put it that way, in more plain language instead of presumed innocent, does everybody agree that we need to come down here (indicating), that he is not guilty and presumed innocent? Does everybody agree with that?" The panel answered affirmatively.

A moment later, juror Carol King volunteered a clarification: "The question was presumed innocent. Yes, and I agree with that. But presumed innocent and not guilty — not guilty is a verdict. I don't know the answer to the verdict, so I'm in the don't know category." In response, Hopson's counsel gave a lengthy hypothetical:

> Let's say that you read in the paper that somebody has robbed the Starbucks. You go to work and you're talking to everybody in the office, somebody robbed the Starbucks. Did you hear about that. They went in and they pulled out a gun. They held a gun out and they said, I want 42 skinny lattes, no foam, and I wanted them right now. The lady makes up all the skinny lattes and gives them to her. The lady runs out. People can't believe it. The Starbucks got robbed of skinny lattes.
>
> A couple of weeks later you're not going to the coffee shop anymore; you're drinking your coffee at home, and you read on the internet that they've arrested someone for robbing the Starbucks and the lady's name is Cathy Caffeine. That's just one crazy coincident, isn't it. You rush to the office, having read it on the internet and there you are in your office. Everybody comes in. You know you're the first to know because you read it on the internet. Do you say to your office workers, they caught the person that robbed the Starbucks and her name is Cathy Caffeine? Is that what everybody says? Or do you say, they arrested somebody for

> robbing the Starbucks and I don't know if she is guilty or not, but they
> did arrested [sic] somebody.  Really odd her name is Cathy Caffeine.
> *Don't we all say, they caught the person who robbed the Starbucks?*

(Emphasis added.)  In response to this oration, the panel responded affirmatively.  Juror Carol King, however, again interjected a point of clarification:  "I would say that depends upon whether I'm sworn to do a jury determination."  Hopson's counsel responded, "I'm just talking about in your every day life.  When you came to work or when your family came home, would you say, they caught the person who robbed the Starbucks?"  King replied:  "I probably would say they caught someone."

Hopson's counsel then commented on King's answer:  "Now, I think we all agree that pretty much, on a regular basis, that's what we say.  Now, that's your every day life.  Having agreed to that, does everybody agree that we can, as jurors, say waited [sic] a minute, this isn't about they caught somebody; this is about a person who is presumed to be innocent.  Can we all say that?"  The venire panel responded affirmatively.  At that point, juror Vernie Hudson added, "when they say they caught someone, that doesn't mean they caught the exact person that did it.  You've got to wait and see the evidence."

Hopson's counsel continued with this line of questioning.  "So let me ask you this question.  Does everybody in here have children, nephews?"  The venire panel responded affirmatively.  Counsel then gave another hypothetical:

> Your son comes home with a note and he gives it to you from the
> principal.  And the note says, Johnny broke the window in the car at the
> school.  Now, you go to Johnny and say, come up to your room, we have
> to talk about this.  Johnny says, wait a minute, I don't have to say
> nothing.  I don't have to prove nothing.  They have to come tell you
> everything.  *Raise your hand if you're not putting up with that at home.*

(Emphasis added.)  The venire panel again responded in the affirmative.  At this, Hopson's counsel argued, "If you're not putting up with that at home, how could you possibly put up with

that in a trial." He immediately followed up with, "Now, can you, and do you honestly believe that the defendant shouldn't have to say anything or prove anything, that [the prosecutors] have to proof [sic] this whole trial? Can you raise your hand if you honestly believe that." After the venire panel responded affirmatively, juror Carol King asked, "Repeat the question."

In response to King's request, Hopson's counsel rephrased the point without using hypothetical situations:

> Okay. If you honestly believe that the Commonwealth's Attorneys have to prove everything beyond a reasonable doubt, the defendant doesn't have to say a word or prove one shred of evidence in this case, if you believe that that's their burden, the defendant doesn't have to testify, say anything or present any evidence, if you believe that is true, could you please raise your hand.

The venire panel responded affirmatively. Juror Hudson interjected: "He doesn't. It's your job. . . . What I mean by that is, because of client/lawyer confidentiality, you should know all the information in order to defend him properly." Hopson's counsel asked, "But do you understand that it's not my job to put on any evidence; that's the Commonwealth's job?" Hudson responded with his own question, "You don't have to come up with anything to defend him when they make their allegations?" Hopson's counsel answered, "We can just sit there silent. That's what the law requires. Probably isn't likely I'm going to do that."

No doubt confused by this exchange, juror Edwin Maier said: "*I* would want to present something in that case to say if *I* was innocent. *I* would stand up for *my* rights, for *my* moment to speak. If it's their right to prove everything, that's fine. *I* still wouldn't sit by and say nothing, *me, personally*." Hopson's counsel changed the focus of Maier's remark, "I understand. I perfectly understand. Then you think that somebody charged with murder, they should get up there and tell their side of the story?" Maier answered: "I feel like they should. I mean, I don't think they should sit there and be quiet, let someone else say something."

Addressing the entire venire, Hopson's counsel commented favorably on Maier's remark. "This gentleman," referring to Maier, "has brought up a good point. This man is charged with murder. He says, in his opinion, he's not trying to buck the law or cause any ripple effect here, but he says he should get up on this witness stand and tell you what happened. He's charged with murder. Can you raise your hand if you agree with that?" The transcript does not record any group affirmative response by the venire. Instead, juror Hudson said: "*I* know *I* would if *I* was in that place." Several other prospective jurors — Steven Featherlin, James King, JoAnn Swoveland, Vonda Carter, Edwin Maier, Robert Jackson, and Temika Kidd — similarly agreed.

When given his opportunity to question the venire, the prosecutor sought to clarify the earlier series of questions and answers by Hopson's counsel: "Some of you raised your hands in reference to the fact that if the defendant does not take the stand, that you will wonder because you would want to defend yourself and take the stand; is that correct? Some of you did do that?" The venire panel responded affirmatively. The prosecutor then refocused the question: "If the Judge were to instruct you that the law is that *this man*, the *defendant*, does not have to take the stand to defend *himself*, could you follow the law?" The panel responded affirmatively. To further clarify, the prosecutor again asked:

> Could each and every one of you, especially those who raised your hands
> and said you would want to take the stand and defend yourself, I
> understand your personal belief, but could you follow the law that this
> Judge is going to instruct you that says the defendant does not have to
> take the stand in this case to defend himself?

The venire panel responded affirmatively. The prosecutor confirmed, "No one says no to that?" The panel agreed.

Hopson's counsel moved to strike for cause eight jurors: Maier, Hudson, James King, Featherlin, Jackson, Swoveland, Kidd, and Winnegan. The trial court struck Maier and Hudson for cause because "they were very vocal in their opinions" during voir dire. The other jurors, the

court held, gave no indication they would have any difficulty following the instructions of law recognizing the defendant's right not to take the stand or to put on any evidence in his defense.

Hopson and the Commonwealth exercised their peremptory strikes, and the court seated a petit jury to try the case. The jury found Hopson guilty of voluntary manslaughter and use of a firearm during the commission of that felony. The trial court dismissed the firearm charge and entered final judgment convicting Hopson of voluntary manslaughter.

II.

On appeal, Hopson argues that the trial court abused its discretion in striking only two of the eight jurors Hopson sought to discharge for cause. The remaining six jurors, Hopson claims, likewise should have been stricken because they could not be trusted to recognize his constitutional right not to testify or to present evidence in his defense. We find no error in the trial court's decision.

Virginia "jurisprudence according deference to the trial court's discretion in consideration of juror voir dire matters is long-standing." Juniper v. Commonwealth, 271 Va. 362, 397, 626 S.E.2d 383, 406 (2006); Townsend v. Commonwealth, 270 Va. 325, 329, 619 S.E.2d 71, 73 (2005). This deference stems from our recognition that "a trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be stricken." Teleguz v. Commonwealth, 273 Va. 458, 475, 643 S.E.2d 708, 719 (2007). In this respect, the question "[w]hether a juror is impartial is a pure question of historical fact." David v. Commonwealth, 26 Va. App. 77, 81, 493 S.E.2d 379, 381 (1997) (citing Wainwright v. Witt, 469 U.S. 412, 428 (1985)). Absent a showing of "manifest error," we will not overturn the trial court's exercise of its discretion during voir dire. Juniper, 271 Va. at 401, 626 S.E.2d at 408.

- 6 -

Venire panel members who express preconceived opinions do not become *per se* disqualified to sit on the petit jury:

> It is not uncommon to discover during voir dire that prospective jurors have preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case. Even though a prospective juror may hold preconceived views, opinions, or misconceptions, the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial.

Cressell v. Commonwealth, 32 Va. App. 744, 761, 531 S.E.2d 1, 9 (2000) (quoting Griffin v. Commonwealth, 19 Va. App. 619, 621, 454 S.E.2d 363, 364 (1995) (citation omitted)).

Faced with this problem, trial courts must examine the "the nature and strength of the opinion formed." Briley v. Commonwealth, 222 Va. 180, 185, 279 S.E.2d 151, 154 (1981) (citation omitted). "The spectrum of opinion can range, by infinite shades and degrees, from a casual impression to a fixed and abiding conviction. The point at which an impression too weak to warp the judgment ends and one too strong to suppress begins is difficult to discern." Id. "The opinion entertained by a juror, which disqualifies him, is an opinion of that *fixed character* which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." Justus v. Commonwealth, 220 Va. 971, 976, 266 S.E.2d 87, 91 (1980) (citation omitted and emphasis added).

That line is not irrevocably breached merely by juror comments about the defendant's failure to take the stand in his own defense. "It would be unrealistic to think that jurors do not notice when defendants fail to testify." Townes v. Commonwealth, 234 Va. 307, 329, 362 S.E.2d 650, 662 (1987) (citing Carter v. Kentucky, 450 U.S. 288, 301 n.18 (1981)). To be sure, "it is not surprising that jurors would want or expect a defendant to testify; any conscientious juror naturally would want all the help he or she could get in deciding a case. It should not be

grounds for a *per se* exclusion, therefore, when prospective jurors on voir dire indicate their wants or expectations in this respect." Id.[1]

In our case, the trial court determined that the prospective jurors challenged by Hopson did not hold impermissible opinions of a "fixed character," Justus, 220 Va. at 976, 266 S.E.2d at 91, in opposition to the defendant's presumed innocence or his right to present no defense. In reviewing this exercise of discretion, we examine the "entire voir dire, not just isolated portions." Juniper, 271 Va. at 401, 626 S.E.2d at 408 (quoting Jackson v. Commonwealth, 267 Va. 178, 191, 590 S.E.2d 520, 527 (2004)); see also Wolfe v. Commonwealth, 265 Va. 193, 212, 576 S.E.2d 471, 482 (2003). From that vantage point, we cannot conclude the trial court abused its discretion in reaching this conclusion.

The voir dire questions by Hopson's counsel did more to confuse the issue than to clarify it. His first series of questions required the venire members to choose between saying (i) Hopson is guilty, (ii) Hopson is not guilty, and (iii) they do not know if he is guilty or not guilty. When the venire members said they did not know, counsel chastised them for misunderstanding the Commonwealth's burden of proof and Hopson's imputed innocence. As juror Carol King correctly pointed out, however, she understood Hopson was "presumed innocent" but that is entirely different from declaring him "not guilty — not guilty is a verdict." No prospective juror, she rightly insisted, could predict the verdict in the case.

---

[1] See also Eaton v. Commonwealth, 240 Va. 236, 247, 397 S.E.2d 385, 391-92 (1990) (finding no error in seating a juror who "initially voiced concern" about the defendant not taking the stand but later confirmed his willingness to abide by the court's instructions clarifying the defendant's rights); Pope v. Commonwealth, 234 Va. 114, 123, 360 S.E.2d 352, 358 (1987) (approving seating of juror who initially "indicated by his answers that he believed that the defendant was required to prove his innocence" but later affirmed his duty to presume the defendant's innocence); McGill v. Commonwealth, 10 Va. App. 237, 242-43, 391 S.E.2d 597, 600-01 (1990) (holding no error in refusing to strike a juror for cause despite the necessity to correct a preconceived notion that the defendant was required to prove his innocence).

Equally misleading were the lengthy hypotheticals concerning conversations at work about "Cathy Caffeine" being caught for stealing from Starbucks or a parent's reaction to a son who refused to explain a note home from the school principal. Idle conversation around the water cooler is hardly a reliable test case for probing one's understanding of the burdens of proof in criminal law or one's ability to faithfully conform to the sworn duties of a juror. As for the parent-child hypothetical — "Raise your hand if you're not putting up with that at home." — few parents would recognize (and even fewer children would expect to successfully invoke) a Fifth Amendment privilege in the face of a disciplinary note from the principal. "If you're not putting up with that at home, how could you possibly put up with that in a trial," counsel asked rhetorically. The answer was too plain to say: Because the defendant is not my schoolboy son, and the courtroom is not my home.

That brings us to the last series of questions, those ostensibly directed at the defendant's right not to testify or to present any evidence. Here again, the questions posed by Hopson's counsel appeared designed more to create a false issue than to discern a true misunderstanding on the part of the venire. Juror Hudson (whom the trial court later struck for cause) said he understood Hopson's right not to testify but expected Hopson's counsel to "come up" with something "to defend him when they make their allegations." Juror Maier (whom the trial court later struck for cause) also confirmed he understood Hopson's right *not* to testify, but Maier said he personally would exercise *his* right *to* testify: "*I* would want to present something in that case to say if *I* was innocent. *I* would stand up for *my* rights, for *my* moment to speak." Hopson's counsel then recast Maier's remark: "Then you think that somebody charged with murder, they should get up there and tell their side of the story?" Maier's response seemed to concede the point.

Hopson's counsel then sought to project Maier's responses to the entire venire panel. Counsel told the panel that Maier "has brought up a good point. This man is charged with murder. He says, in his opinion, he's not trying to buck the law or cause any ripple effect here, but he says *he* should get up on this witness stand and tell you what happened. *He's* charged with murder. Can you raise your hand if you agree with that?" It was in response to that question that juror Hudson said: "*I* know *I* would if *I* was in that place." The other venire members (Featherlin, James King, Swoveland, Carter, Maier, Jackson, and Kidd) appeared to adopt Hudson's statement.

This entire discussion, however, subtly confused the issue. Hopson had a constitutional right not to testify. He had an equally fundamental constitutional right to testify. The only issue the venire jurors should have been questioned on was whether they would hold it against Hopson if he chose to exercise the former, not the latter, constitutional right. Whether the *jurors themselves* would make a similar choice, if they were charged with a crime, is entirely beside the point. See Isom v. State, 682 S.W.2d 755, 757 (Ark. 1985) (finding no bias on part of juror who said he would want to testify if he were on trial but understood that a defendant is not required to testify and that the defendant's refusal to testify cannot be held against him).

The prosecutor untangled this knot with his follow-up questions: "Some of you raised your hands in reference to the fact that if the defendant does not take the stand, that you will wonder because *you would want to defend yourself and take the stand*; is that correct?" The venire panel responded affirmatively. The prosecutor then correctly reframed the relevant question: "If the Judge were to instruct you that the law is that *this man*, the *defendant*, does not have to take the stand to defend *himself*, could you follow the law?" The jury venire again responded affirmatively. To further clarify, the prosecutor again asked:

Could each and every one of you, especially those who raised your hands and said you would want to take the stand and defend yourself, I understand your personal belief, but could you follow the law that this Judge is going to instruct you that says the defendant does not have to take the stand in this case to defend himself?

The panel responded affirmatively. The prosecutor confirmed, "No one says no to that?" The panel again agreed.

This exchange was not a last-minute rehabilitation of venire members who had expressed a fixed predisposition hostile to the defendant's rights. Prior to the first question being asked by Hopson's counsel, the prospective jurors affirmed during the court's opening colloquy that they understood "the defendant is presumed to be innocent," that "the Commonwealth must prove the defendant's guilt beyond a reasonable doubt," and that "the defendant is not required to produce evidence." And even in the midst of the confusion caused by Hopson's counsel, the prospective jurors again confirmed on three separate occasions their agreement with the proposition that the defendant was presumed innocent and had a right not to testify or produce evidence. Thereafter, the prosecutor's closing series of questions merely reconfirmed the venire's understanding and agreement with these principles. See, e.g., Eaton v. Commonwealth, 240 Va. 236, 247, 397 S.E.2d 385, 391-92 (1990); Townes, 234 Va. at 328, 362 S.E.2d at 662; Pope v. Commonwealth, 234 Va. 114, 123, 360 S.E.2d 352, 358 (1987); McGill, 10 Va. App. at 243, 391 S.E.2d at 601.

In sum, the six prospective jurors that the trial court declined to strike did not offer any opinion of a "*fixed character* which repels the presumption of innocence in a criminal case" or reveal a predisposed belief that "the accused stands condemned already." Justus, 220 Va. at 976, 266 S.E.2d at 91 (citation omitted and emphasis added).[2] At most, these venire members stated

---

[2] This distinguishes our case from Breeden v. Commonwealth, 217 Va. 297, 299 n.*, 227 S.E.2d 734, 736 n.* (1976), where a juror believed "the fact that [the defendant] is here is strong indication that he is guilty." It was in the face of this obviously impermissible statement of bias

only that they would choose to testify if *they* were accused of a crime. This understandable personal opinion, which they affirmed would not prejudice Hopson's corresponding right not to testify, did not disqualify them from sitting on the petit jury in this case.

III.

Because the trial court did not abuse its discretion in granting only two of the eight for-cause strikes requested by Hopson, we affirm his conviction for voluntary manslaughter.

Affirmed.

---

that the prosecutor's "long, complex, leading questions" failed to rehabilitate the juror. Similarly, in Bradbury v. Commonwealth, 40 Va. App. 176, 178, 578 S.E.2d 93, 94 (2003), the juror voiced an opinion that, in a rape case, "the man bears the burden of proving that the woman consented to sex." In response, the trial judge used "leading, long, and complex" questions in an ineffectual effort at rehabilitation. Id. at 182, 578 S.E.2d at 96.