UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Russell and AtLee
Argued at Fredericksburg, Virginia


MARION KENNETH ALLEN, JR.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1117-14-4                      JUDGE RICHARD Y. ATLEE, JR.
                                                    NOVEMBER 3, 2015
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Joseph B. Dailey (Law Office of Joseph B. Dailey, PLLC, on
brief), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


A Fairfax County jury convicted Marion Kenneth Allen, Jr. ("appellant") of robbery and

use of a firearm to commit that robbery.  He contends:  (1) the trial court erred in denying his

motion to strike a prospective juror for cause, and (2) the jury erred in finding the evidence

sufficient to convict him.  We disagree and affirm.

I.  BACKGROUND

On appeal, we review evidence in the light most favorable to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  In doing so, we

"'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as

true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn

therefrom.'"  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis

omitted) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954)).

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Additionally, "an appellate court's 'examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling.'" Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). Instead, we "'must consider all the evidence admitted at trial that is contained in the record.'" Id. (quoting Bolden, 275 Va. at 147, 654 S.E.2d at 586).

So viewed, the evidence showed that on April 29, 2013, appellant traveled from Maryland to Virginia, with his cousin and two other people, to meet a juvenile ("the victim"). The victim had exchanged Facebook messages with one of the passengers, Xavier Hall, and had arranged to trade a pair of shoes and a phone to Hall in exchange for money and marijuana. Hall and the victim had agreed to meet at a Taco Bell in a shopping center in Annandale, Virginia.

That night, appellant's cousin drove his extended cab pickup truck into the restaurant parking lot, and the victim got into the front passenger seat. Initially the victim saw only the driver, who began driving toward an alley behind one of the nearby businesses. The victim, who was facing forward, then "felt someone grab both [his] arms" at the elbows with two hands. While his arms were being held, the victim "felt someone tap something on [his] head." The victim "turned around really quickly" and saw "a really long black tube." The victim "believed [the tube] was a gun" because he later heard "a pumping sound." Someone in the backseat took the victim's phone and a pocketknife out of his pants pockets. The victim then was instructed to take off his watch, his shoes, and his pants.

Once the truck reached the alley, the driver turned off the headlights and continued driving. A police officer who was patrolling the area noticed the truck driving without headlights and pulled it over. The victim testified that when the officer "turned on the [patrol car's] lights," the two hands that had been securing the victim released their grip. The officer approached the driver and asked for everyone's identification. The officer could see the driver,

the victim, and a third person with dreadlocks (appellant) seated "in the backseat of the truck behind the passenger." The officer then noticed that the victim "was much younger than the driver and the passenger." When the officer looked at the victim, "he appeared to be extremely nervous," and he "made a gesture with his mouth" as if "he was trying to tell [the officer] something without letting the other people in the vehicle know." The officer then knew that "there was something wrong." He instructed the backup unit to watch the other individuals in the vehicle and told the victim to leave the truck. The victim got out of the truck and told the officer "that [he] was getting robbed for [his] shoes and that they ha[d] a gun."

All the officers on the scene then "retreat[ed] back to an area behind cover" in order to "initiate a felony traffic stop" by "order[ing] all the remaining occupants out of the car at gunpoint." The first person to exit the truck was a man lying "on the back floorboard behind the driver," whose presence was previously unknown to the officers. This man was "ducking between the seats" and "lying on top of the gun." The driver and appellant (who was seated in the rear passenger-side seat) were ordered out of the truck as well. When officers approached the vehicle to confirm there was no one else in the truck, one of the officers discovered Hall lying under some clothing in the truck's bed. Officers discovered a shotgun on the floor of the backseat of the truck. They also found three unspent shotgun shells in the pocket of the man that had been ducking between the seats on top of the gun. Finally, the victim's pocketknife and phone were found on the rear passenger-side seat where appellant had been sitting.

Appellant testified that he was in the truck because he had asked his cousin earlier in the day to give him a ride to sell his iPad. Appellant also testified that he had asked his sister for a sleeping pill that evening because he was starting a new job the next day. Appellant took the sleeping pill "around 6:00, 6:30ish," and appellant's cousin picked him up soon after. After appellant sold his iPad, his cousin "said he was bored and he didn't want to go in the house yet."

His cousin then called Hall, who in turn asked appellant's cousin to pick him and another friend up so they could "buy some shoes." Appellant believed they were going to stay in Maryland.

Appellant claimed that he fell asleep as his cousin drove to pick up Hall and Hall's friend. Appellant alleged that he "was in and out of sleep the whole time [he] was in the car," awakening at one point to smoke marijuana near a park, and at another point to make a purchase at a gas station. Appellant claimed that he then fell back to sleep and did not awaken until "somebody shook [his] leg" after the officer pulled them over in the alley in Virginia. Appellant claimed not to know what state he was in when he was shaken awake. Appellant testified that he only saw the victim sitting in front of him when he woke up and that he never touched the victim. Appellant also denied touching the phone or pocketknife that were removed from the victim's pockets and found lying on the edge of appellant's seat. Appellant admitted to a previous felony conviction of a crime of moral turpitude.

At the conclusion of the Commonwealth's case-in-chief, appellant moved to strike the evidence as insufficient as a matter of law, and renewed his motion at the conclusion of his own case. The trial court denied both motions. After the trial court denied appellant's renewed motion to strike, however, the Commonwealth called a detective as a rebuttal witness. This detective had interviewed appellant at the police station shortly after the robbery. The detective testified that during the interview, appellant had "stated he was in Virginia" and had said "[h]e went to several gas stations" during the trip from Maryland to Virginia. Appellant made no additional motion to strike following the testimony of the Commonwealth's rebuttal witness. The jury convicted appellant of robbery and use of a firearm in the commission of the robbery. Appellant never moved to set aside the jury's verdict.

II. ANALYSIS

*A. Jury Selection*

Appellant first argues that the trial court erred in denying his motion to strike, for cause, a member of the *venire* ("the prospective juror") because the prospective juror was "having difficulty presuming [appellant] to be innocent."[1] Appellant's Brief at 2.

At the beginning of *voir dire*, the trial judge asked the *venire* whether any of them had "expressed or formed any opinion as to the innocence or guilt of [appellant]." The prospective juror answered, "No." The prospective juror also affirmed that she did not "know any reason whatsoever why [she] cannot give a fair and impartial trial to the Commonwealth of Virginia and to [appellant] based solely on the law and the evidence" and that she understood that "[appellant] is presumed innocent." She additionally affirmed for the Commonwealth that she "agree[d] to follow the law and make [her] decision based upon the law," whether she liked the law or not.

Later during *voir dire*, appellant's attorney asked: "Any of you feel that just because he was charged with something there's going to be something in the back of your head in being [sic], 'Well, we wouldn't be here if there wasn't some reason why he's here?'" The prospective juror stated: "Well, I have to admit that's kind of going through my head . . . ." Appellant's attorney further stated "you must assume that my client is innocent" until the Commonwealth "meet[s] their burden." Appellant's attorney then questioned the prospective juror again: "Now,

---

[1] Rule 5A:20(c) requires an appellant to provide this Court "with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court." In his brief, appellant cites pages 60-63 of the appendix as the location of his preservation of this assignment of error. Those pages contain nothing related to this assignment of error. Notwithstanding this non-compliance with the Rule, we have located the preservation of this assignment of error at pages 53-56 of the appendix and will consider this assignment of error. See Moncrief v. Div. of Child Support Enforcement ex rel. Joyner, 60 Va. App. 721, 731, 732 S.E.2d 714, 719 (2012) (holding that "appellant's failure to strictly adhere to the requirements of Rule 5A:20(c) were insignificant and were not so substantial as to preclude us from addressing the merits of the case").

thinking about that do you still think you would have that presumption in the back of your head that he must be here for a reason?" The prospective juror replied: "Well, I guess I sort of do. I'm sorry, I mean, I have to be honest that I—yeah."

The trial judge then interjected: "'The fact that Mr. Allen has been indicted is on trial— and is on trial is absolutely no indication of his guilt.' Now, that I've told you the law does that help you with this idea that you have about him being here?" The prospective juror replied: "Yeah, that helps." The trial judge then restated that appellant was "presumed innocent at this point" and asked whether the prospective juror could "set aside that concept that as [appellant's attorney] said, 'That he must have done something that's why he's here.'" The prospective juror responded: "Okay. Yeah, I can." Appellant's attorney moved to strike the prospective juror for cause. The trial court denied the motion, and appellant later struck the prospective juror peremptorily.

"Juror impartiality is a question of fact, and a trial court's decision to seat a juror is entitled to great deference on appeal." Lovos-Rivas v. Commonwealth, 58 Va. App. 55, 61, 707 S.E.2d 27, 30 (2011) (citations omitted). "This deference stems from our recognition that 'a trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be stricken.'" Hopson v. Commonwealth, 52 Va. App. 144, 151, 662 S.E.2d 88, 92 (2008) (quoting Teleguz v. Commonwealth, 273 Va. 458, 475, 643 S.E.2d 708, 719 (2007)). "Accordingly, the decision to retain or exclude a prospective juror 'will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.'" Lovos-Rivas, 58 Va. App. at 61-62, 707 S.E.2d at 30 (quoting Barrett v. Commonwealth, 262 Va. 823, 826, 553 S.E.2d 731, 732 (2001)). "In reviewing this exercise of discretion, we examine the 'entire voir dire, not just

isolated portions.'" Hopson, 52 Va. App. at 153, 662 S.E.2d at 93 (quoting Juniper v. Commonwealth, 271 Va. 362, 401, 626 S.E.2d 383, 408 (2006)).

Although we are deferential to a trial court's decision to seat or strike a juror, "[a]n accused has a fundamental right to a trial by an impartial jury," such that "any reasonable doubt regarding [a venireman's] impartiality must be resolved in favor of the accused." Barker v. Commonwealth, 230 Va. 370, 374, 337 S.E.2d 729, 732-33 (1985). "This does not mean, however, that a trial court must exclude all veniremen who have any preconceived opinion of the case." Id. at 375, 337 S.E.2d at 733. "Thus, '[i]t is the duty of the trial court, through the legal machinery provided for that purpose, to procure an impartial jury to try every case.'" Roberts v. CSX Transp., Inc., 279 Va. 111, 116, 688 S.E.2d 178, 181 (2010) (alteration in original) (quoting Salina v. Commonwealth, 217 Va. 92, 93, 225 S.E.2d 199, 200 (1976)). Accordingly, "[t]he trial judge should . . . ask questions or instruct only where necessary to clarify and not for the purposes of rehabilitation." McGill v. Commonwealth, 10 Va. App. 237, 242-43, 391 S.E.2d 597, 600 (1990). "If a trial judge adheres to this role, an appellate court may not set aside the trial judge's determination of a juror's impartiality if the juror's responses, even though conflicting, support that determination." Id. at 243, 391 S.E.2d at 600.

To determine "whether a venireman who has formed an opinion is constitutionally impartial, courts must 'determine . . . the nature and strength of the opinion formed.'" Briley v. Commonwealth, 222 Va. 180, 185, 279 S.E.2d 151, 154 (1981) (alteration in original) (quoting Reynolds v. United States, 98 U.S. 145, 156 (1878)). "The spectrum of opinion can range, by infinite shades and degrees, from a casual impression to a fixed and abiding conviction." Id. "'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.'" Id. at 186, 279 S.E.2d at 154-55 (quoting Irvin

v. Dowd, 366 U.S. 717, 723 (1961)).  Rather, the test of a prospective juror's impartiality is whether "'the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'"  Id. (quoting Irvin, 366 U.S. at 723).  "'The opinion entertained by a juror, which disqualifies him, is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already.'"  Hopson, 52 Va. App. at 152, 662 S.E.2d at 92-93 (emphasis omitted) (quoting Justus v. Commonwealth, 220 Va. 971, 976, 266 S.E.2d 87, 91 (1980)).

Our inquiry is straightforward here, for the simple reason that the answers of the prospective juror to the *voir dire* questions of appellant's attorney evinced no bias.  Appellant's attorney's question was this:  "Any of you feel that just because he was charged with something there's going to be something in the back of your head in being [sic], 'Well, we wouldn't be here if there wasn't some reason why he's here?'"  Appellant's attorney maintained at oral argument that this was simply another way of asking:  "Do any of you feel that the defendant is here because he must have done something wrong?"  At trial, however, appellant's attorney phrased the actual question so poorly that the prospective juror's affirmative answer showed no bias.  Even when following up in his questioning of the prospective juror, appellant's attorney only asked this:  "Now, thinking about that do you still think you would have that presumption in the back of your head that he must be here for a reason?"  This question offers no clarity, and only restates the murky initial query.  Again, the prospective juror's affirmative answer showed no bias.  Everyone in the courtroom that day was there "for a reason."  The jurors had been summoned; the judge, prosecutor, and defense attorney had each been assigned the case; the defendant had been indicted.  Acknowledging that the defendant must be there "for a reason" does not acknowledge any bias.  That the judge, in his attempt to explain the law to the prospective juror, seemed to understand what appellant's attorney was trying to ask does not

retroactively cast the prospective juror's answers in any more sinister a light. Because appellant's question to the prospective juror elicited no bias, there was no infirmity for the trial judge to rehabilitate.

Even presuming that the prospective juror initially expressed a preconception that appellant "must have done something wrong," the responses from the prospective juror throughout *voir dire* supported the trial court's finding that the prospective juror could be impartial. Following the trial judge's initial inquiries to the *venire*, the prospective juror responded that she could be fair and impartial and presume appellant to be innocent until proven guilty. She also confirmed to the trial judge that she had not "expressed or formed any opinion as to the innocence or guilt of [appellant]."

After reviewing the entire *voir dire*, we cannot say that the prospective juror held an opinion of such a "'fixed character'" that the presumption of innocence was repelled, nor can we say that appellant stood "'condemned already'" in the mind of the prospective juror. Hopson, 52 Va. App. at 152, 662 S.E.2d at 92-93 (emphasis omitted) (quoting Justus, 220 Va. at 976, 266 S.E.2d at 91). Given the prospective juror's affirmation at the beginning of *voir dire* that appellant was presumed innocent and her later confirmation that she could set aside any idea that appellant "must have done something," any opinion of the prospective juror was merely a "casual impression" rather than a "fixed and abiding conviction." Briley, 222 Va. at 185, 279 S.E.2d at 154. Thus, the trial court did not abuse its discretion in refusing to strike the prospective juror for cause.

### B. Sufficiency of the Evidence

Appellant next argues that the jury erred in finding the evidence sufficient to convict him of the offenses because "the evidence was insufficient as a matter of law to prove Appellant[']s involvement in the robbery or the use of the firearm during the robbery, and the jury could not

have overcome every reasonable hypothesis of innocence." We find no merit in appellant's sufficiency argument.[2]

"We review lower court factfinding with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). "An appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (emphasis added). Thus, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have

---

[2] The Commonwealth asserts that, under Rule 5A:18, appellant waived any objection to the sufficiency of the evidence, because he failed to move to strike the Commonwealth's evidence following the Commonwealth's presentation of a rebuttal witness. (A motion to set aside the jury's verdict also would have preserved an objection to the sufficiency of the evidence, but appellant made no such motion.) A "defendant must afford the trial court the opportunity upon proper motion to decide the question of the sufficiency of *all the evidence*, and . . . if he fails to do so, he has waived his right to challenge the sufficiency of the evidence on appeal." Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 80, 688 S.E.2d 199, 208 (2010) (emphasis added). Although appellant had made two prior motions to strike, the landscape of the case changed with the Commonwealth's introduction of a rebuttal witness. Because appellant failed to move to strike at the end of all the evidence, or to set aside the jury's verdict, "'the trial court was never asked to rule on [the issue of evidentiary sufficiency] based on the *entire record*.'" Id. at 75, 688 S.E.2d at 205 (emphasis added) (quoting White v. Commonwealth, 3 Va. App. 231, 233, 348 S.E.2d 866, 867 (1986)). Notwithstanding this shortcoming, "[o]ur jurisprudence requires us to seek 'the best and narrowest ground available' for our decision. In this case, resolution of the merits constitutes the best and narrowest ground." Abdo v. Commonwealth, 64 Va. App. 468, 473 n.1, 769 S.E.2d 677, 679 n.1 (2015) (quoting Armstead v. Commonwealth, 56 Va. App. 569, 576, 695 S.E.2d 561, 564 (2010)). We therefore decline to decide whether Rule 5A:18 precludes this assignment of error, and we will rule on the merits as to the sufficiency of the evidence.

reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929).

"This deferential standard of review 'applies not only to the historical facts themselves, but the inferences from those facts as well.'" Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003)). "Thus, a factfinder may 'draw reasonable inferences from basic facts to ultimate facts,'" Tizon v. Commonwealth, 60 Va. App. 1, 10, 723 S.E.2d 260, 264 (2012) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004)), "unless doing so would push 'into the realm of *non sequitur*,'" id. (quoting Thomas, 48 Va. App. at 608, 633 S.E.2d at 231).

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Elliott v. Commonwealth, 277 Va. 457, 462, 675 S.E.2d 178, 181 (2009). "'[T]he victim's testimony alone, if not inherently incredible, is sufficient to support a conviction . . . .'" Quyen Vinh Phan Le v. Commonwealth, 65 Va. App. 66, 77, 774 S.E.2d 475, 480 (2015) (quoting Nobrega v. Commonwealth, 271 Va. 508, 519, 628 S.E.2d 922, 927 (2006)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Juniper, 271 Va. at 415, 626 S.E.2d at 417 (quoting Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968)). Therefore, "the testimony of a single witness, if found credible by the [factfinder] and not found inherently incredible by this Court, is sufficient to support a conviction." McCary v. Commonwealth, 36 Va. App. 27, 41, 548 S.E.2d 239, 246 (2001).

"[I]t is axiomatic that any fact that can be proved by direct evidence may be proved by circumstantial evidence." Etherton v. Doe, 268 Va. 209, 212-13, 597 S.E.2d 87, 89 (2004). Proof that the defendant is a "criminal agent," like any other portion of the prosecution's case, may rest on "inferences to be drawn from circumstantial evidence." Cook v. Commonwealth, 226 Va. 427, 432, 309 S.E.2d 325, 329 (1983). The requirement "'that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" Haskins, 44 Va. App. at 8, 602 S.E.2d at 405 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 258, 584 S.E.2d 444, 447-48 (2003) (*en banc*)). This statement "merely 'reiterates the standard applicable to every criminal case.'" Id. (quoting Pease v. Commonwealth, 39 Va. App. 342, 360, 573 S.E.2d 272, 280 (2002) (*en banc*), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003)).

Further, "[t]he rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong.'" Ervin v. Commonwealth, 57 Va. App. 495, 519, 704 S.E.2d 135, 147 (2011) (*en banc*) (quoting Archer v. Commonwealth, 26 Va. App. 1, 13, 492 S.E.2d 826, 832 (1997)). This is true "*even* if there is 'some evidence to support' the hypothesis of innocence." Id. (quoting Hudson, 265 Va. at 513, 578 S.E.2d at 785). "'Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded.'" Clanton, 53 Va. App. at 573, 673 S.E.2d at 910 (quoting Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964)). Thus, "on appellate review for the sufficiency of the evidence, the factfinder's rejection of a hypothesis of innocence 'cannot be overturned as arbitrary unless no rational factfinder would have come to that conclusion.'" Ervin, 57 Va. App. at 520, 704 S.E.2d at 147 (quoting Clanton, 53 Va. App. at 573, 673 S.E.2d at 910 (emphasis omitted)).

Although the victim never saw appellant sitting directly behind him in the truck, a jury could infer from the evidence that more than one person from the backseat of the truck participated in the robbery. The victim testified that two hands grabbed his elbows at the same time the barrel of a shotgun was placed against his head. Someone from the backseat took the victim's phone and pocketknife out of the victim's pants pockets. The phone and knife were found on the edge of the rear passenger seat, behind the victim, where appellant had been sitting. Someone from the backseat demanded that appellant remove his watch, shoes, and pants. The officer that initially pulled the truck over, as well as the officers that later cleared the truck, observed appellant seated in the rear passenger seat behind the victim. After reviewing the facts and circumstances, we cannot say that no rational finder of fact could have found appellant guilty of robbery.

Additionally, the same facts and circumstances that could lead a rational factfinder to find appellant guilty of robbing the victim support the jury's finding of guilt for the use of a firearm in the commission of the robbery. "[O]ne who never held or possessed a firearm might nevertheless be convicted as a principal in the second degree of the use of a firearm in the commission of a felony where he acted in concert with the gunman." Carter v. Commonwealth, 232 Va. 122, 125, 348 S.E.2d 265, 267 (1986). Although the shotgun shells were discovered in the possession of the man ducking between the seats and lying on top of the shotgun, appellant's assistance in the robbery permitted the jury to find him guilty of using a firearm in the commission of the robbery, regardless of whether he held or possessed the shotgun during the crime.

As to appellant's theory that he slept through the crime and Hall must have reached across appellant from the bed of the truck, the jury clearly did not believe it. The jury

> sitting as factfinder, was at liberty to discount [appellant]'s
> self-serving statements as little more than lying to "conceal his

- 13 -

guilt," <u>Coleman v. Commonwealth</u>, 52 Va. App. 19, 25, 660 S.E.2d 687, 690 (2008) (citation omitted), and could treat such prevarications as "affirmative evidence of guilt," <u>id.</u> (quoting <u>Wright v. West</u>, 505 U.S. 277, 296 (1992)).  This principle naturally follows from the broader observation that "whenever a witness testifies, his or her credibility becomes an issue."  <u>Hughes v. Commonwealth</u>, 39 Va. App. 448, 462, 573 S.E.2d 324, 330 (2002) (citation omitted).

<u>Armstead v. Commonwealth</u>, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010).  Appellant had a prior conviction for a felony crime of moral turpitude, which the jury was permitted to consider in assessing his credibility.  We do not find the jury's rejection of appellant's hypothesis of innocence plainly wrong.

### III. CONCLUSION

For the reasons stated above, we affirm appellant's convictions.  Because the *voir dire* answers of the prospective juror showed no bias, the trial court committed no error in refusing to strike her for cause.  We cannot say that no rational finder of fact could have found the evidence sufficient to find appellant guilty, nor was the jury plainly wrong to reject appellant's hypothesis of innocence.

<u>Affirmed.</u>