COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges O'Brien and Lorish
Argued at Lexington, Virginia


ADRIAN ISAIAH GRAY

                                        MEMORANDUM OPINION* BY
v.        Record No. 0785-22-3          JUDGE MARLA GRAFF DECKER
                                        AUGUST 8, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Jim D. Childress, III (Childress Law Firm, PC, on brief), for
appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General; Maureen E. Mshar, Assistant Attorney General,
on brief), for appellee.


Adrian Isaiah Gray appeals his conviction for possession of a firearm by a convicted violent

felon, in violation of Code § 18.2-308.2.[1] He argues that the trial court abused its discretion when

it failed to strike a prospective juror for cause. The appellant additionally contends that the trial

court abused its discretion when it admitted surveillance footage of the scene of the crime and

still photographs taken from that footage. For the following reasons, we affirm the conviction.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] In a bifurcated trial, the appellant was also convicted of malicious wounding and use of
a firearm in the commission of a felony, in violation of Code §§ 18.2-51, -53.1. Those
convictions are not before this Court.

BACKGROUND[2]

The appellant was tried by a jury for possession of a firearm by a convicted violent felon.

During voir dire, Juror 10 indicated that he opposed having a firearm in his home. The appellant

did not ask the court to strike him for cause. He later used a peremptory strike to remove the

prospective juror.

The prosecution presented evidence that on October 11, 2014, the appellant shot Marcus

McCarthy in a parking lot. Along with other evidence, the Commonwealth introduced surveillance

video of the parking lot when the shooting occurred. It also introduced still photographs from that

video.

The jury convicted the appellant of possession of a firearm by a convicted violent felon, in

violation of Code § 18.2-308.2. In accordance with the jury's recommendation, the trial court

imposed a sentence of five years of incarceration.

ANALYSIS

The appellant challenges his conviction on two grounds. He argues that the trial court

erred by not striking Juror 10 for cause. He also contends that the trial court abused its discretion

by admitting the surveillance video recording of the incident and still photographs taken from the

footage.

---

[2] On appeal, this Court reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party below. *Jackson v. Commonwealth*, 266 Va. 423, 428 (2003) (jury selection); *Walker v. Commonwealth*, 74 Va. App. 475, 481 (2022) (admission of evidence). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn" from that evidence. *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

## I. Jury Selection

We turn first to the appellant's argument that the trial court should have struck Juror 10 for cause. In support of his position, he contends that he "should not have been forced to use his limited peremptory strikes on biased jurors." To conduct our analysis of the issue we review the entire voir dire.

At the outset of voir dire, the trial court asked the prospective jurors several questions. Their responses indicated that they had no personal interest in the trial, that they had obtained no information about the alleged offenses, that they had expressed no opinion about the appellant's guilt or innocence, and that they were unaware of any personal bias or prejudices. The prospective jurors also indicated that they understood that the appellant was presumed innocent, that he did not have to produce any evidence, and that the Commonwealth had to prove his guilt beyond a reasonable doubt. All the prospective jurors further indicated that they knew of no reason why they could not be fair and impartial to the parties.

Next, the prosecutor informed the prospective jurors that the appellant was charged with the crime of possessing a firearm by a convicted violent felon. She asked whether anyone believed that action should not be a crime. A prospective juror responded in the affirmative and consequently was later stricken for cause. Prospective jurors were also asked if they believed the Commonwealth must produce the firearm to prove the charge. Several prospective jurors answered affirmatively. Later these individuals were asked whether there were other factors to consider besides producing the firearm. One of these jurors stated that she could not render a verdict without a firearm in evidence—and, consequently, was stricken for cause.

The appellant's counsel also questioned the prospective jurors. Noting that this case involved a weapon, counsel then asked, "[a]re there any of you here that do not have firearms in your house or in your home?" Counsel observed that many of the prospective jurors did not have

firearms at home. He inquired, "are those of you who do not have firearms in your home, are they not there because of a philosophical or a moral issue involving not wanting to have a firearm in your home?" Of the prospective jurors, Jurors 10 and 12 answered affirmatively. Juror 29 also stated that she opposed firearms generally. The appellant's counsel asked, "[d]oes the fact that a firearm figure[s] in this case and the allegation against [the appellant], does that firearm create a situation where you might be more disinclined or less favorable toward him because there is a weapon involved?" The transcript illustrates that Juror 10 did not answer the question, while Jurors 12 and 29 answered in the negative.

After the prospective jurors were asked additional unrelated questions, the voir dire was complete, and the trial court struck several jurors for cause. The court then asked the prosecutor and the appellant's counsel if there were any additional strikes for cause. Both responded in the negative. Finally, the court asked if they were satisfied with the composition of the jury, and both sides replied that they were. The attorneys then exercised their peremptory strikes, and a jury was selected and sworn.

It is with this factual backdrop that the Court now considers the challenge on appeal.

In Virginia, objections to the seating of jurors must be asserted "[p]rior to the jury being sworn." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (alteration in original) (quoting Code § 8.01-352(A)). "After the jury has been sworn, a litigant may only make an objection relating to the empanelling of jurors with leave of court." *Mason v. Commonwealth*, 255 Va. 505, 509 (1998) (quoting Code § 8.01-352(A)(ii)). "[A] litigant who seeks to set aside a jury verdict or obtain a new trial on the basis of a juror's disability must demonstrate that the 'disability be such as to probably cause injustice . . . to the Commonwealth or to the accused.'" *Id.* at 510 (quoting Code § 8.01-352(B)).

In addition, Rule 5A:18 requires that an "objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Under this rule, "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." *Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc), *aff'd by unpub'd order*, No. 040019 (Va. Oct. 15, 2004)).

In the instant case, the record makes clear that at no time did the appellant ask the trial court to strike Juror 10 for cause. When asked if there were any additional strikes after the trial court struck other prospective jurors for cause, the appellant's counsel replied in the negative. In fact, he expressed satisfaction with the composition of the jury pool before exercising his peremptory strikes. *See generally Cressell v. Commonwealth*, 32 Va. App. 744, 755 (2000) ("[A]n accused is entitled to a panel of jurors free from exception before exercising peremptory challenges."). Moreover, the record shows that the appellant was given multiple opportunities to further examine Juror 10 about his moral and philosophical objection to firearms, but he did not utilize them. The appellant failed to challenge the seating of Juror 10 before using a peremptory strike, and he did not express any concerns whatsoever about that juror. Nor did he raise this issue at any point to the trial court. As a result, the appellant wholly failed to preserve the challenge for appeal. *See* Code § 8.01-352; Rule 5A:18; *Spencer v. Commonwealth*, 238 Va. 295, 306-07 (1989).

The appellant asks the Court to apply the "ends of justice" exception to Rule 5A:18.[3] That exception "is narrow and is to be used sparingly." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)).

---

[3] The appellant does not ask the Court to apply the good cause exception to Rule 5A:18, and the Court will not raise that exception sua sponte. *See Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017).

When analyzing "whether to apply" the ends-of-justice exception, an appellate court "considers two questions." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016). The first is "whether there is error as contended by the appellant," and the second is "whether the failure to apply the ends of justice provision would result in a grave injustice." *Id.* (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). To meet the requirements of the exception, an appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Conley v. Commonwealth*, 74 Va. App. 658, 683 (2022) (quoting *Holt*, 66 Va. App. at 210). The error at issue must be "clear, substantial and material." *Brown v. Commonwealth*, 279 Va. 210, 219 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 338 (2004)).

It is uncontroverted that a criminal defendant has a constitutional right to be tried by an impartial jury. U.S. Const. amend. VI; Va. Const. art. I, § 8. And, it is a trial court's responsibility to ensure that jurors are free from bias. *See Griffin v. Commonwealth*, 19 Va. App. 619, 621 (1995). Therefore, during voir dire, if it appears "to the court that the juror does not stand indifferent in the cause, another shall be drawn or called and placed in his stead for the trial of that case." Code § 8.01-358. A potential juror should be struck for cause if he or she "has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice." *Mayfield v. Commonwealth*, 59 Va. App. 839, 845 (2012) (quoting *Townsend v. Commonwealth*, 270 Va. 325, 330 (2005)); *see* Rule 3A:14. The process of voir dire is intended to identify any legitimate bases for removing a juror for cause.[4]

Voir dire often uncovers prospective jurors' "preconceived notions, opinions, or misconceptions about the criminal justice system . . . or about the particular case." *Cressell*, 32 Va. App. at 761 (quoting *Griffin*, 19 Va. App. at 621). A juror can fulfill the impartiality

---

[4] It also provides counsel with information valuable to decisions regarding peremptory challenges.

requirement regardless if he "can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." *Id.* (quoting *Griffin*, 19 Va. App. at 621). In contrast, a venireperson is disqualified if his opinion is one of a "fixed character which repels the presumption of innocence in a criminal case." *Justus v. Commonwealth*, 220 Va. 971, 976 (1980) (quoting *Slade v. Commonwealth*, 155 Va. 1099, 1106 (1931)).

Given that the trial court is "able to see and hear each member of the venire respond to questions posed" during voir dire, it "is in a superior position to determine whether a prospective juror's responses . . . indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Townsend*, 270 Va. at 329 (quoting *Green v. Commonwealth*, 262 Va. 105, 115 (2001)); *Keepers v. Commonwealth*, 72 Va. App. 17, 42-43 (2020) (quoting *Green*, 262 Va. at 115).

"Juror impartiality is a question of fact . . . ." *Huguely v. Commonwealth*, 63 Va. App. 92, 121 (2014) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). "[W]hen conducting appellate review on [a] question of fact, . . . the trial court's [finding] must be affirmed unless it is plainly wrong or without evidence to support it." *Sheppard v. Commonwealth*, 250 Va. 379, 387 (1995). When an appellate court reviews a decision to not strike a prospective juror for cause, the Court "must give deference to the trial court's decision whether to exclude or retain a prospective juror because the trial court 'sees and hears the juror.'" *Weeks v. Commonwealth*, 248 Va. 460, 475 (1994) (quoting *Eaton v. Commonwealth*, 240 Va. 236, 246 (1990)). Accordingly, the decision to retain or exclude a prospective juror will not be disturbed on appeal unless there has been "manifest error amounting to an abuse of discretion." *Lovos-Rivas*, 58 Va. App. at 61 (quoting *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001)).

In determining whether the trial court should have excluded a certain juror, the appellate court considers the "entire voir dire, not just isolated portions." *See Juniper v. Commonwealth*, 271 Va. 362, 401 (2006) (quoting *Jackson v. Commonwealth*, 267 Va. 178, 191 (2004)). In the instant case, the appellant relies on an isolated portion of voir dire in making his argument that the trial court should have excluded the prospective juror.

During this portion of voir dire, the appellant's counsel posed questions about firearms. He asked if members of the venire had firearms in their homes. Counsel noted that "[m]any of you do not." Counsel proceeded to ask the prospective jurors "who do not have firearms in [their] home," whether firearms were "not there because of a philosophical or a moral issue involving not wanting to have a firearm in your home." Jurors 10, 12, and 29 indicated that was the reason they did not have firearms in their own homes. The appellant's counsel's final question on this subject asked if the prospective jurors would be less favorable towards the appellant because a firearm was involved. None of the jurors responded affirmatively. Jurors 12 and 29 responded in the negative to this question. The trial transcript does not reflect a response from Juror 10. This is the context of the appellant's untimely challenge on appeal.

The record here does not establish that Juror 10, whom the appellant now argues should have been excluded for cause, held firm opinions of such "fixed character which repel[ed] the presumption of innocence in a criminal case." *See Justus*, 220 Va. at 976 (quoting *Slade*, 155 Va. at 1106). At most, Juror 10 expressed agreement with an abstract proposition raised by the appellant's counsel—that firearms are morally objectionable. Although Juror 10 indicated that he did not have firearms in his own home, the record below simply does not reveal "the nature and strength of the opinion formed" by him or how such would relate to the appellant. *Briley v. Commonwealth*, 222 Va. 180, 185 (1981) (quoting *Reynolds v. United States*, 98 U.S. 145, 156 (1878)). The appellant's counsel did not ask any follow-up questions of Juror 10 or seek to

question him individually.  The record does not contain any evidence to suggest that Juror 10 indicated a "casual impression" or held a "fixed and abiding conviction" that would cause bias or prejudice against the appellant.  *See Hopson v. Commonwealth*, 52 Va. App. 144, 152 (2008) (quoting *Briley*, 222 Va. at 185).  Consequently, the isolated portion of voir dire the appellant relies upon does not reveal that Juror 10 was unable to decide this case fairly and impartially.

In addition, considering the entire voir dire, not just isolated portions, Juror 10 indicated he had no pre-existing opinions about the appellant's guilt or innocence, he was not biased toward either the appellant or the Commonwealth, and he could try the appellant fairly and impartially apply the law and the facts of the case.  Nothing in the record demonstrates that Juror 10 was biased or otherwise should have been struck for cause, and the appellant has failed to demonstrate that a miscarriage of justice occurred.  Therefore, this assignment of error does not fall within the narrow circumstances in which the ends-of-justice exception to Rule 5A:18 applies.

For these reasons, consideration of the appellant's challenge to Juror 10 is procedurally barred.

## II.  Admission of Evidence

The appellant contends that the trial court erred in admitting the surveillance footage of the offense and the still photographs taken from that footage because they were not properly authenticated by a custodian of record.  He argues that the Commonwealth improperly relied on a patron of the restaurant to authenticate the surveillance footage.  Specifically, he suggests Jasmine Durell could testify only that certain portions of the video were accurate, not the entire recording.

The Commonwealth made a motion to admit the video recording from the restaurant parking lot surveillance camera into evidence.  The appellant objected and argued that an employee from the business that made the recording was needed to authenticate the surveillance footage and

ensure it had not been altered. He made the same objection to the introduction of still images captured from the video recording. The trial court rejected these challenges and admitted the video and the photographs into evidence.

The Commonwealth had several eyewitnesses testify about what happened that night in relation to the events recorded by the surveillance camera. Those witnesses included Jasmine Durell, Jimmy Simpson, and Marcus McCarthy. Each viewed the video and testified about it.

Durell, who was in the restaurant parking lot when the shooting occurred, testified that she reviewed the surveillance footage before trial and attested that it fairly and accurately represented the events of that night. While the recording was played for the jury, Durell identified the appellant as the man in the video in a blue zip-up sweatshirt and blue jeans. In part of the video, the appellant appears to be holding an item in his hands, but Durell did not see it on the night of the shooting. In the still images extracted from the surveillance footage, Durell identified the appellant.

Simpson, who was also present, likewise affirmed that the recording was a fair and accurate depiction of what occurred in the parking lot that night. He identified himself and the appellant in the video. Additionally, Simpson testified that he watched the appellant shoot McCarthy.

McCarthy, the victim, also watched the surveillance footage during his testimony and identified himself in the video both before and after he was shot. McCarthy did not see who shot him, nor was he asked to identify the shooter in the video.

This Court reviews a trial court's decision to admit evidence applying an abuse of discretion standard. *See Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022). Great deference is afforded to the trial judge. The "bell-shaped curve of reasonability" underpinning appellate review for an abuse of discretion "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, ___ Va. ___, ___ (Mar. 16, 2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)); *Minh*

*Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Sauder*, 289 Va. at 459). "A reviewing court can conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result." *Howard*, 74 Va. App. at 753.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims." Va. R. Evid. 2:901. "[A]uthentication does not set a high barrier to admissibility[ ] and is generally satisfied by any form of proof that supports a finding that [the evidence] is what it purports to be." *Atkins v. Commonwealth*, 68 Va. App. 1, 9 (2017) (first alteration in original) (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* § 17-1, at 1164 (7th ed. 2012)). "Once this threshold for proving admissibility has been met," the evidence should be admitted, and any claimed "gaps in the evidence" or other deficiencies "are relevant to the trier of fact's assessment of its weight rather than its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122-23 (2019).

The same evidentiary rules apply to the admission of both video recordings and photographs. *Stamper v. Commonwealth*, 220 Va. 260, 271 (1979); *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 46 (2019). When someone who witnessed the events in a video testifies that it accurately represents what took place, the testimony of its maker is not required. *See Tirado v. Commonwealth*, 296 Va. 15, 26-27 (2018). The same principle applies to photographs. *Bailey v. Commonwealth*, 259 Va. 723, 738 (2000). If a witness's testimony verifies that the photograph "fairly represent[s] what that witness has observed," that photograph "is admissible in evidence" without the testimony of the photographer. *Id.* (quoting *Ferguson v. Commonwealth*, 212 Va. 745, 746 (1972)).

At trial, Durell testified that the surveillance footage and the still photos fairly represented what she witnessed the night of the shooting in the parking lot. She identified

herself and the appellant in the footage and the appellant in the photographs. While Durell's testimony alone was sufficient for authentication, Simpson also testified that the surveillance footage and still photos accurately depicted the shooting he saw on October 11. Simpson's testimony further established that the surveillance footage and still photographs were accurate depictions of what occurred that night. Finally, McCarthy testified that the video showed him when he was in the parking lot both before and after he was shot. Clearly, the testimony of the three witnesses was sufficient to "support a finding that the thing[s] in question"—here, the video footage and photos, were accurate depictions of that evening and were what the "proponent claims" as required by Virginia Rule of Evidence 2:901. Accordingly, we hold that the trial court did not abuse its discretion in concluding that the Commonwealth adequately authenticated the surveillance footage and still photographs to admit them into evidence.

CONCLUSION

The appellant failed to challenge Juror 10 for cause, and he did not object to the seating of that juror prior to peremptory strikes or, for that matter, at any time prior to appeal. Consequently, that assignment of error is barred. Further, the record does not provide a basis for applying the ends-of-justice exception to permit this Court to consider whether the trial court erred when it did not strike Juror 10 for cause. Finally, the trial court did not abuse its discretion when it admitted surveillance footage taken of the shooting and still photographs excerpted from that video after several witnesses who were present for the incident authenticated them. Accordingly, we affirm the conviction.

*Affirmed.*