**Salem**

JAMES JOSEPH McGILL

v.

COMMONWEALTH OF VIRGINIA

No. 0583-88-3 .

Decided April 24, 1990

COUNSEL

Arelia S. Langhorne and A. Ellen White (Jester and Jester, P.C., on brief), for appellant.

Richard A. Conway, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**—In this appeal of a first degree murder conviction we consider the exclusion of a prospective juror for cause and the admissibility of evidence of another crime. During *voir dire*, one of the venire acknowledged that she felt that the defendant was required to prove his innocence; however, because of the manner in which *voir dire* was conducted, we are able to affirm the trial court's determination that the juror was impartial. During the course of the trial, evidence was admitted, over the defendant's objection, that he had assaulted another woman earlier on the same evening that he assaulted and murdered the victim in this case. We conclude that this evidence was admissible because it was part of a course of conduct demonstrative of the defendant's motive.

On the evening of the murder, the defendant and a companion were driving in an automobile in downtown Roanoke, when they saw the victim, a prostitute. They stopped and negotiated with her to perform oral sex. She entered the car and directed them to another location. Upon reaching that location, the victim left the automobile and went into a house. When she returned from the house, she got into another vehicle containing three or four men and drove away. The defendant told his companion that he had given the victim money, and they followed the automobile in which she was riding.

The victim soon got out of the automobile with the other men and entered the automobile with the defendant and his compan-

ion, who was driving. When the defendant demanded the return of his money, the victim said that she had already spent it but that she would perform the agreed upon sexual favors.

While the defendant's companion drove the automobile, the defendant argued with the victim for the return of his money. When the victim continued to assert that she had already spent the money, the defendant, who was in the back seat, began to choke the victim, who was sitting in the front seat. The victim started to scream and attempted to open the car door and jump out of the moving vehicle. The defendant pulled her back in, shut the door, and continued to choke her.

Finally, the automobile came to a stop. The defendant got out of the car, pulled the victim into the underbrush beside the road and began to beat her. After he stopped beating her, she stood up and stumbled a couple of steps and fell down. The defendant beat her again. He took off the victim's clothes, looking for money in her pockets, and attempted, unsuccessfully, to rape her. The defendant and his companion put the victim's body on the hood of the automobile and drove until they reached a bridge, where they threw her off. She died from injuries to her neck, chest and abdomen.

## VOIR DIRE

During *voir dire*, a prospective juror answered "yes" when defense counsel asked if any of the venire thought the defendant was required to prove his innocence. When examined by the Commonwealth's attorney, she said that she could follow instructions from the court that "a defendant is presumed innocent and is not required to produce evidence on his behalf and it is the responsibility of the Commonwealth to prove its case beyond a reasonable doubt." She also responded that she would not have any difficulty following such instructions. Upon further examination by defense counsel, she made the following conflicting statement: "Because somebody accused of something doesn't mean that you did that. You have to be proved innocent."

The trial court denied defense counsel's motion to strike this woman from the jury for cause, saying that he thought she "made clear that she could decide this case based upon the law and evidence" and that "[i]t's somewhat natural that you sometimes get

contradictory answers from jurors in this procedure." Relevant portions of the *voir dire* examination are contained in an appendix to this opinion.

The defendant contends that the trial court erred in failing to strike this person from the venire because she expressed a bias and the attempts to rehabilitate her were not successful. We conclude, however, that, although there was conflict in the prospective juror's answers to questions concerning bias, the trial judge properly conducted the *voir dire* examination and, therefore, his resolution of the conflict was a proper exercise of his discretion.

■ An accused has a fundamental right to a trial by an impartial jury and any reasonable doubt regarding a venireman's impartiality must be resolved in favor of the accused. *Barker v. Commonwealth*, 230 Va. 370, 374, 337 S.E.2d 729, 733 (1985). It is equally well settled that this does not require a trial court to exclude all veniremen who have any preconceived opinion concerning the case. *Id.* at 375, 337 S.E.2d at 733.

■ Some veniremen are subject to automatic exclusion regardless of actual impartiality. *Id.* at 375, 337 S.E.2d at 733 (automatic disqualification based on knowledge of an accused's previous conviction of the same offense upon retrial); *Gray v. Commonwealth*, 226 Va. 591, 593, 311 S.E.2d 409, 410 (1984) (automatic disqualification based on kinship to party or victim); *Salina v. Commonwealth*, 217 Va. 92, 94, 225 S.E.2d 199, 200 (1976) (automatic disqualification based on ownership of stock in victim corporation).

■ If a venireman is not subject to an automatic exclusion, he or she must still be excluded if there is any reasonable doubt regarding his or her impartiality. *Barker*, 230 Va. at 374-75, 337 S.E.2d at 733. Ordinarily, this determination rests within the sound discretion of the trial court and will not be disturbed on appeal absent manifest error. *Id.*

■ Manifest error may arise from a lack of evidence to support the trial court's decision and also from use of a selection procedure which does not result in a fair and impartial jury. *See Turner v. Commonwealth*, 221 Va. 513, 522, 273 S.E.2d 36, 41 (1980). Although the manner of selection of a jury, in the absence of statute or rule of court, is within the trial court's discretion, it

must be a manner of selection that assures a fair and impartial jury. *Id.*

■ Determination of a prospective juror's impartiality differs from the usual factual finding. It is not the determination of a past fact; instead, it is a determination of a present state of mind, a prediction of future behavior. For this reason, the method of the *voir dire* examination may affect the trial court's ability to determine a prospective juror's impartiality.

■ A trial judge's determination of a prospective juror's impartiality may be in doubt when there is uncertainty about the trial judge's objectivity. A trial judge who actively seeks to rehabilitate a prospective juror may unconsciously become an advocate for the juror's impartiality.

■ Using or permitting the use of leading questions, those which suggest a desired answer, in the *voir dire* of a prospective juror may taint the reliability of the juror's responses. Merely giving "expected answers to leading questions" does not rehabilitate a prospective juror. *Martin v. Commonwealth*, 221 Va. 436, 444, 271 S.E.2d 123, 129 (1980). Proof of a prospective juror's impartiality "should come from him and not be based on his mere assent to persuasive suggestions." *Breeden v. Commonwealth*, 217 Va. 297, 300, 227 S.E.2d 734, 736 (1976) (quoting *Parsons v. Commonwealth*, 138 Va. 764, 773, 121 S.E. 68, 70 (1924)). When asked by the court, a suggestive question produces an even more unreliable response. *See Foley v. Commonwealth*, 8 Va. App. 149, 160, 379 S.E.2d 915, 921 (1989). A juror's desire to "say the right thing" or to please the authoritative figure of the judge, if encouraged, creates doubt about the candor of the juror's responses.[1]

■ A trial judge who actively engages in rehabilitating a prospective juror undermines confidence in the *voir dire* examination to assure the selection of fair and impartial jurors. *Id.* at 154-55, 379 S.E.2d at 918. The proper role for a trial judge is to remain detached from the issue of the juror's impartiality. The trial judge should rule on the propriety of counsel's questions and ask ques-

---

[1] In an experimental setting, prospective jurors responded more candidly to attorney's questions than to judge's questions. Jones, *Judge Versus Attorney-Conducted Voir Dire*, 11 Law & Human Behavior 131, 143 (1987).

tions or instruct only where necessary to clarify and not for the purposes of rehabilitation. If a trial judge adheres to this role, an appellate court may not set aside the trial judge's determination of a juror's impartiality if the juror's responses, even though conflicting, support that determination.

In this case, the trial judge did not attempt to rehabilitate the prospective juror involved. He gave a few preliminary instructions and asked general questions necessary to determine the presence of bias. He then allowed the attorneys to examine the jurors in groups of five, ruling on objections to questions as they arose. After the prospective juror indicated that she felt the accused must prove his innocence, the trial judge allowed the Commonwealth's attorney and defense counsel to examine her further. When the *voir dire* was completed, he ruled on the defense motion to strike the juror in question for cause. At no time did he exert any influence over the juror's responses.

The prospective juror's responses were conflicting. After first saying that the defendant was required to prove his innocence, she twice affirmed that she could follow the court's instructions that the defendant was presumed innocent and that the Commonwealth had to prove his guilt. She may also have misspoken when she said "Because somebody accused of something doesn't mean that you did that. You have to be proved innocent." Only if she meant to say, "you have to be proved guilty," is this remark not self-contradictory. The trial judge, having remained relatively detached, was able to determine if her initial misapprehension of the applicable law had been corrected and if her otherwise contradictory answer was no more than a product of momentary confusion.

The *voir dire* was properly conducted. The responses from the juror, although conflicting, supported the trial court's finding that she was impartial. We hold that the trial court did not abuse his discretion in not striking the prospective juror for cause.

## EVIDENCE OF OTHER CRIMES

Prior to the murder, but on the same evening, the defendant, his companion and two other men were driving in the same automobile in the same vicinity and picked up another prostitute. She gave them directions to her house. When the driver failed to turn in the direction she had indicated, she became angry, threatened

to break the windshield of the automobile, and got out of the automobile when it stopped. As she attempted to run away from the car, the defendant caught her, struck her, and then he and his companion beat and kicked her. They fled when she screamed.

The defendant contends that this evidence was improperly admitted relying on the general rule that other crimes evidence generally is inadmissible to prove the commission of the crime charged. The Commonwealth responds that the defendant waived this objection by introducing evidence of the same character. During his own testimony, the defendant described his version of this assault, and the Commonwealth contends that under *Saunders v. Commonwealth*, 211 Va. 399, 177 S.E.2d 637 (1970), he cannot now object.

*Saunders* does not, however, stand for as broad a rule as the Commonwealth contends. In *Saunders*, the defendant went much further than simply attempting to rebut the previously admitted evidence of another crime. Instead, the defendant in *Saunders* introduced evidence of several additional crimes which had not been introduced into evidence by the Commonwealth. *Id.* at 401, 177 S.E.2d at 639.

The authority relied on by the Court in *Saunders* explains the rule. An objection to previously introduced testimony is not waived by "the mere cross-examination of a witness or the introduction of rebuttal evidence, either or both." *Snead v. Commonwealth*, 138 Va. 787, 801, 121 S.E. 82, 86 (1924); *Culbertson v. Commonwealth*, 137 Va. 752, 757, 119 S.E. 87, 88 (1923). A waiver does not result until the party objecting to the introduction of evidence actually introduces, on his own behalf, evidence that is similar to that to which the objection applies. *Id.* Since the defendant only attempted to rebut the Commonwealth's evidence by describing his version of how the other assault occurred and did not attempt to introduce similar evidence on his own behalf, the defendant did not waive his objection to the Commonwealth's evidence.

Even though we find no waiver of the objection, we agree with the Commonwealth's further contention that the evidence was admissible because it tended "to establish a . . . course of conduct, and . . . such crime is so related to the crime charged that proof of one tends to establish the other, or tends to establish motive, in-

tent, or knowledge." *Minor v. Commonwealth*, 213 Va. 278, 280, 191 S.E.2d 825, 826-27 (1972).

Important to this conclusion is a statement attributed to the defendant by his accomplice. After the assault on the first prostitute, the defendant was throwing her purse out of the window of the automobile when he said, "Nobody don't care about damn prostitutes, let's clean up the streets." This statement linked the first crime with the defendant's motive in committing the second crime.

This evidence was not offered to establish the defendant's identity nor was it introduced to show his "state of mind to molest women." *See Day v. Commonwealth*, 196 Va. 907, 915, 86 S.E.2d 23, 27 (1955). The defendant and his accomplice were the only two people present at the scene of the murder. Each contended that the other committed the crime. The earlier assault, linked to the murder by the defendant's statement, evidenced the defendant's motive to commit the murder and tended to corroborate the accomplice's testimony. Therefore, the trial court did not err in admitting the evidence of the other crime.

In summary, we hold that the trial court did not err in refusing to exclude for cause a prospective juror who made conflicting statements reflecting on her impartiality since, after properly conducted *voir dire*, the trial court concluded that she could serve impartially. We also hold that the defendant did not waive his objection to the admissibility of the Commonwealth's evidence because of his attempt to rebut it, but that the evidence of the earlier assault was admissible since it was part of a course of conduct demonstrating the defendant's motive. Therefore, the judgment of conviction is affirmed.

*Affirmed.*

Koontz, C.J., and Moon, J., concurred.

### APPENDIX

DEFENSE COUNSEL: Do any of you think that the defense, that we are required to prove Mr. McGill's innocence?

JUROR: Yes.

\* \* \* \*

COMMONWEALTH'S
ATTORNEY: ... I don't mean to be picking on you, but if I could direct this question to you. If you were instructed by the Court that the law of this Commonwealth is that a defendant is presumed innocent and is not required to produce evidence on his behalf and it is the responsibility of the Commonwealth to prove its case beyond a reasonable doubt, could you follow those instructions?

JUROR: Yes.

COMMONWEALTH'S
ATTORNEY: And would you have any difficulty in following those instructions from the Court?

JUROR: No.

COMMONWEALTH'S
ATTORNEY: Could you decide this case based solely upon the law and evidence that you would hear in the Courtroom?

JUROR: Yes.

COMMONWEALTH'S
ATTORNEY Thank you. No further questions.

* * * *

DEFENSE COUNSEL: ... [W]hen you said that you thought that we were required to prove that Mr. McGill was innocent and then [the Commonwealth's attorney] asked you if you knew that the law was that we didn't have to do that, would you be able to follow the law. Would you tell us sort of why you felt like we had to prove the Defendant's innocence?

JUROR: Well, I thought that's what you were there for.

DEFENSE COUNSEL:   You thought that's what we were there for. Well, do you think that simply because somebody has been accused of an offense that they are guilty until we prove them innocent.

JUROR:   Until you prove them innocent. Because somebody accused of something doesn't mean that you did that. You have to be proved innocent.

DEFENSE COUNSEL:   We are going to ask that [the juror] be struck for cause due to her feelings in this matter.

THE COURT:   I will have to allow follow up because now she said something a little different from what she said before. I've got to wait until this is all over before I can rule.

COMMONWEALTH'S ATTORNEY:   I want to make sure that I understand what you are saying. Did I understand you to be saying that just because somebody is accused of something doesn't mean —

JUROR:   That they did it.

COMMONWEALTH'S ATTORNEY:   Who do you think has to prove — Well, again, my question is, if the Court instructs you that the Commonwealth — that means me putting on my case — that I have to prove my case beyond a reasonable doubt and they don't have to prove anything, that the Defendant is presumed innocent until proven guilty beyond a reasonable doubt. Could you follow that instruction?

JUROR:   Yes.