COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Elder and Annunziata
Argued at Salem, Virginia


CONSTANCE MARTIN DILLARD
                                    MEMORANDUM OPINION[*] BY
v.         Record No. 1800-94-3      JUDGE LARRY G. ELDER
                                        APRIL 23, 1996
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                    James F. Ingram, Judge


        Barbara Hudson for appellant.

        John H. McLees, Jr., Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.


    Constance Martin Dillard (appellant) appeals her conviction
for grand larceny in violation of Code § 18.2-95.  Appellant
contends that the trial court denied her right to a fair and
impartial jury when it failed to disqualify a venireman for
cause.  Because we agree with appellant, we reverse her
conviction.

    On August 22, 1994, jury selection began in appellant's
trial in the Circuit Court of the City of Danville.  The trial
court informed the panel of twenty jurors that appellant was
charged with stealing merchandise totalling $842.25 from a
department store in Danville.

    During questioning from the trial court, a venireman

_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

admitted that he had read information in the newspaper about the incident, but stated that he "wouldn't think" that this would affect his impartiality. During questioning from appellant's counsel, the venireman stated that he did not believe "in somebody stealing from somebody because the taxpayers and the consumers are the ones that gotta pay for it. That's the way I feel about it."

Appellant's counsel thereafter inquired whether the jurors would be able to return a verdict of not guilty by reason of insanity. The venireman stated that he did not believe that he could return a verdict of not guilty by reason of insanity. In response to leading questioning from the Commonwealth, the venireman indicated that he harbored reservations before hearing the evidence in the case but could probably deliberate with the other jurors in order to reach a verdict. At the conclusion of voir dire, appellant challenged the venireman for cause, asserting that his answers showed that he had "already made up his mind on this trial." The trial court overruled the challenge, stating, "I think he has indicated that he can listen to the evidence and base his verdict on the evidence." The venireman was peremptorily struck from the panel and was not seated as a juror.

The jury returned a guilty verdict, and the trial court sentenced appellant to eighteen months in the penitentiary. Appellant now appeals to this Court.

"Whether a juror is capable of laying aside any preconceived opinion and rendering a verdict based solely on the evidence is a matter submitted to the sound discretion of the trial court." Boblett v. Commonwealth, 10 Va. App. 640, 647, 396 S.E.2d 131, 135 (1990). "The decision of the trial court whether to seat a prospective juror is entitled to great weight and will not be disturbed on appeal unless there is manifest error." Id. "The exercise of that discretion, however, is not without limits." Wilson v. Commonwealth, 2 Va. App. 134, 137, 342 S.E.2d 65, 67 (1986).

"A juror who holds a preconceived view that is inconsistent with an ability to give an accused a fair and impartial trial, or who persists in a misapprehension of the law that will render him incapable of abiding the court's instructions and applying the law, must be excluded for cause." Sizemore v. Commonwealth, 11 Va. App. 208, 211, 397 S.E.2d 408, 410 (1990); see Griffin v. Commonwealth, 19 Va. App. 619, 621-22, 454 S.E.2d 363, 364-65 (1995). "The proof that a juror is impartial must emanate from the juror himself." Boblett, 10 Va. App. at 648, 396 S.E.2d at 135.

In examining the overall context of the venireman's responses, we find that he expressed a preconceived opinion that he could not return a verdict of not guilty by reason of insanity. After the venireman's initial response, the trial court allowed the Commonwealth's Attorney to attempt to question

-3-

him. The Commonwealth's Attorney repeatedly asked leading questions of the venireman, such as: (1) "Can't you listen to the evidence from the witness stand and make your decision after hearing the evidence, or have you prejudged it?"; (2) "[D]on't you think you could listen to the evidence in this case and make your decision only after you've heard the evidence from the witness stand?"; and (3) "You are saying that you could listen to the evidence and make your decision after hearing the evidence?"

Not only did the Commonwealth pose leading questions, but the venireman never unequivocally responded to those questions. For example, in response to the Commonwealth's first line of questions on the topic of impartiality, the venireman stated that while he could listen to the evidence and make his decision after hearing the evidence, he still had a reservation in his mind. In a final attempt to rehabilitate the venireman, the Commonwealth asked the leading question, "You are saying that you could listen to the evidence and make your decision after hearing the evidence," to which the venireman merely replied, "Yeah, I'm going to say that."

As in Griffin, neither the trial judge nor the Commonwealth asked questions that enabled the venireman "to explain independently or in his own words" that his preconceived views on the insanity defense "would not interfere with his ability to apply the law to the case as given to him by the judge." Griffin, 19 Va. App. at 625, 454 S.E.2d at 366. In contrast to

the venireman in <u>Boblett</u>, the venireman did not "express[] <u>in his own words</u> an ability to set that preconception aside and follow the instructions of the court, notwithstanding his opinion of the law." <u>Boblett</u>, 10 Va. App. at 649, 396 S.E.2d at 136 (emphasis added).

"Generally, we would be required to give deference to the trial judge, who had the opportunity to hear and observe [the venireperson], in deciding the significance and meaning of his response[s]." <u>Griffin</u>, 19 Va. App. at 625, 454 S.E.2d at 366. However, "[m]erely giving expected answers to leading questions does not rehabilitate a prospective juror." <u>Id.</u> See <u>Bennett v. Commonwealth</u>, 236 Va. 448, 374 S.E.2d 303 (1988), <u>cert. denied</u>, 490 U.S. 1028 (1989); <u>McGill v. Commonwealth</u>, 10 Va. App. 237, 391 S.E.2d 597 (1990).

The Commonwealth contends on appeal that even assuming that the trial court erred, its error was harmless because the venireman was not chosen as a member of the final jury panel. The Commonwealth's argument lacks merit in light of this Court's holding in <u>DeHart v. Commonwealth</u>, 20 Va. App. 213, 456 S.E.2d 133 (1995).

Because manifest error exits in the trial court's ruling, we reverse appellant's conviction and remand the case for further proceedings if the Commonwealth be so advised.

<u>Reversed and remanded.</u>