COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge Friedman and Senior Judge Clements
Argued at Richmond, Virginia


BENJAMIN LAWRENCE BURTON

v.      Record No. 0609-24-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE FRANK K. FRIEDMAN
JULY 22, 2025

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge Designate

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Susan Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

During voir dire a prospective juror gave multiple responses that suggested inherent bias against the accused; the trial court then asked the potential juror: "do you agree with following the [c]ourt's instructions in reaching a verdict?" The prospective juror answered the court's question affirmatively. This case raises the question of whether that affirmative assurance was sufficient to establish the juror as impartial.

The defendant, Benjamin Lawrence Burton, moved to strike the juror for cause.[1] The trial court denied the motion, and Burton utilized a peremptory strike to remove the juror from the proceedings. Thereafter, the circuit court upheld the jury's conviction of Burton for possession of a firearm by a convicted felon. We find the circuit court erred by not striking the potential juror for cause and thus reverse and remand for a new trial.

---

[1] Burton had a previous appeal in this Court related to the same underlying events at issue in this appeal. *See Burton v. Commonwealth*, No. 1386-23-2, 2025 Va. App. LEXIS 81 (Feb. 11, 2025). The issues in that case were separate and unrelated to the present appeal.

BACKGROUND[2]

<u>Events leading to Burton's arrest</u>

On the evening of March 29, 2022, Dietrick Christian and his wife heard knocking at their front door. Christian answered the door, and Burton informed him that he had come to Christian's home because of a conflict with Christian's youngest son. During this discussion on the Christians' front porch, Burton pulled what appeared to be a firearm out of his waistband, and "flashed" it. Christian described the item Burton flashed from his waistband as a "silver" weapon "with black trim."

Before leaving, Burton asked Christian to contact his son so that they could "figure things out." After Burton left, Christian called his son and asked him to come home; his son complied and returned to the residence shortly after the phone call. Christian testified at trial that about 45 minutes to an hour after Burton left the first time, Burton knocked on his door again and asked Christian to tell his son to come outside.

Christian was "skeptical" about the request, but he asked his son to venture out to the porch anyway. After the son reached the porch, Burton approached him, pulled his shirt up and flashed the alleged firearm, stating that "if you want to act like a mother fucker gangster then I'll show you how gangster is." Christian banged on the door to get the attention of his older son and son-in-law in the house, both of whom raced outside to the front porch.

Officers Collin Webb and Christopher Peterson were both called to the Christian residence based upon a reported disturbance with a weapon. When police arrived at the Christians' home,

_____

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Burton "took off." Peterson viewed security footage of the altercation taken from a camera on the Christians' porch and identified Burton as the suspect. Although the officers present at the scene canvassed the area, they failed to recover a firearm. A K9 unit called to the scene also failed to detect any weapon.

The officers eventually located Burton and returned him to the scene of the altercation; Peterson spoke to Burton and searched him for weapons, but did not find any. Burton initially denied possessing a firearm but when Peterson confronted Burton about the surveillance video, Burton stated to Peterson, "if you got video of that, then I'm guilty." Burton also stated that he knew he was not supposed to possess a firearm.

Trial court proceedings

During voir dire, the Commonwealth asked whether any prospective jurors had "bias or prejudice" either "for or against the Commonwealth or the defendant." Juror P.[3] responded affirmatively. In response to further questioning, he stated that he understood Burton was presumed innocent and that the Commonwealth bore the burden of proving guilt beyond a reasonable doubt. When asked whether any jurors felt they could not be fair to either party, Juror P. answered in the affirmative. In response to a question about whether any juror or their family members had been victims of a crime, Juror P. stated that his uncle had been murdered and the perpetrator was convicted. When asked whether that experience caused him to harbor negative feelings toward law enforcement, Juror P. said it did not.

Later, Burton asked if any of the jurors had experience with firearms, either professionally or as a hobby. Juror P. said he owned "several" firearms. He also asserted that he had "strong feelings" about the illegal possession of firearms, adding that "illegal ownership of firearms or firearms that are illegally possessed are the fruit of our problems." When Burton asked whether any

---

[3] We use initials to protect the privacy of the prospective juror.

jurors believed the Commonwealth's burden of proof should be higher or lower just because someone is accused of a firearm offense, Juror P. did not respond one way or the other.

Burton then asked whether any jurors believed that, because a defendant had a prior felony conviction, he was more likely to have committed the offenses in this case. Three prospective jurors (including Juror P.) answered yes. Expanding on his answer, Juror P. admitted he had a "slight bias." Right after Juror P. admitted having a slight bias, the circuit court, itself, interjected in the voir dire and asked Juror P., "[d]o you agree with following the [c]ourt's instructions in reaching a verdict?" Juror P. replied, "I do." The court continued, "[a]nd that is not an instruction you'll receive in the—the evidence you receive in court is what you base your decision on."

At the end of voir dire, Burton moved to strike Juror P. for cause, citing his uncle's murder, his preconceived notions on firearm ownership, illegal guns, and related statements. The Commonwealth objected, arguing, "[h]e told the Court in response to the Court's question that he can be fair and impartial and that would not—." The circuit court interrupted, responding, "Yes, that's why I asked him the question." The court then denied the motion "[b]ecause he answered my question and he said he would follow the law."

At the conclusion of the Commonwealth's case, Burton made a motion to strike, arguing there was inadequate evidence to demonstrate the weapon depicted in the surveillance video and photographs was an instrument designed to expel a projectile via explosion—as required by the governing statute. The court denied the motion. At the close of the evidence, the circuit court partially granted Burton's motion to strike, lowering the charge to possession of a firearm by a non-violent felon.[4] The jury convicted Burton.

---

[4] The conviction order states that Burton was convicted of possession of a firearm by a violent felon. The sentencing order, however, correctly reflects that Burton was convicted of

- 4 -

Following his conviction, Burton challenged the verdict. Burton argued that the verdict should be set aside due to the circuit court's refusal to strike Juror P. for cause, and that the trial court impermissibly attempted to rehabilitate Juror P. Burton further contended there was insufficient evidence that he possessed a firearm; he argued the evidence only showed that he possessed an object which appeared to be a firearm. The circuit court denied the motion.

On appeal, Burton argues the circuit court erred when it failed to strike Juror P. for cause. He also argues the court erred when it denied his motion for a mistrial,[5] and when it admitted certain testimony regarding the object he was carrying. He further asserts that the court erred by granting the Commonwealth's proposed jury instruction on the object's appearance, by rejecting his challenge to the sufficiency of the evidence, and by imposing an impermissible suspended sentence and term of probation.

---

possession of a firearm by a non-violent felon. This clerical issue is moot because we are reversing and remanding for a new trial. *See* Code § 8.01-428(B).

[5] Burton argues the circuit court erred by denying his motion for mistrial where "the trial court unnecessarily and inappropriately interjected itself into the proceeding in front of the jury by commenting on the quality of the evidence and the weight to be afforded it." The crux of Burton's defense was that he did not possess an actual firearm; in furtherance of this position Burton suggested that because a K9 team was unable to locate the firearm, it was more likely that Burton possessed a prop of some kind as opposed to an actual firearm. This was true, he reasoned, because canines can sniff out guns and ammunition if they are present—and props do not use real ammunition. Burton contends that, through its comments, the trial court undercut this theory, by first implying the photograph of Burton with the object was all the jury needed to consider; the court stated in front of the jury "You have a picture of the weapon. There is a photograph of it. It's nothing mysterious." And then the court opined, "I don't know what a dog is going to do for this." According to Burton's argument on appeal, the trial court erred by telling the jury that it was irrelevant whether a K9 searched for the firearm because the photo depicted everything the jury needed to know. Because we are reversing the judgment based on the juror issue, we need not reach Burton's other assignments of error including his "improper comments on the evidence" objection.

ANALYSIS

I. The Circuit Court Erred When it Failed to Grant Burton's Motion to Strike Juror P. for Cause

"Every defendant has the right to trial by an impartial jury." *Harvey v. Commonwealth*, 76 Va. App. 436, 455 (2023). "It is the duty of the trial court, through the legal machinery provided for that purpose, to procure an impartial jury to try every case." *Salina v. Commonwealth*, 217 Va. 92, 93 (1976) (citing *Slade v. Commonwealth*, 155 Va. 1099, 1106 (1931)). "In the criminal context, it is well-settled that a trial court commits 'prejudicial error' if it 'force[s] a defendant to use peremptory strikes to exclude a venire[person] from the jury panel if that person is not free from exception.'" *Roberts v. CSX Transp., Inc.*, 279 Va. 111, 117 (2010) (quoting *Townsend v. Commonwealth*, 270 Va. 325, 329 (2005)). Our Supreme Court explained in *Breeden v. Commonwealth*, 217 Va. 297 (1976), that forcing a defendant to use a peremptory strike to remove a biased juror is not harmless error, because a criminal defendant "has a right to an impartial jury drawn from 'a panel [of twenty] free from exceptions.'" *Id.* at 300 (quoting former Code § 8-208.19).[6]

"[T]he test of impartiality is whether the venireperson can lay aside [his or her] preconceived views and render a verdict based solely on the law and evidence presented at trial." *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011) (quoting *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000)). Even so, "[i]t is not possible to apply definite rules to serve as a test in all cases as to the competency of jurors, and each case must be determined under its own facts and circumstances." *Temple v. Moses*, 175 Va. 320, 336 (1940).

---

[6] The Constitutions of the United States and of Virginia protect a defendant's right in criminal cases to be tried by an impartial jury. U.S. Const. amend. VI; Va. Const. art. I, § 8. We have noted that "Virginia law goes beyond the protections afforded under federal law by further providing that '[i]t is prejudicial error for the trial court to force a defendant to use peremptory strikes to exclude a venireman from the jury panel if that person is not free from exception.'" *Garcia v. Commonwealth*, 60 Va. App. 262, 267-68 (2012) (quoting *Townsend*, 270 Va. at 329).

### A. Precedent Dealing with Clarifying and Identifying Juror Bias as well as Rehabilitation of Prospective Jurors

Our case law demonstrates that a circuit court has significant discretion in conducting voir dire; an underlying question of juror impartiality is one of fact, and the trial court's determination on the subject is "entitled to great deference on appeal" unless "plainly wrong or unsupported by the record." *Northcraft v. Commonwealth*, 78 Va. App. 583, 588 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 121, 127 (2014)). "[A] trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be str[uck]." *Harvey*, 76 Va. App. at 454 (quoting *Teleguz v. Commonwealth*, 273 Va. 458, 475 (2007)).

That discretion is balanced, however, by the requirement that all doubts about a juror's impartiality must be resolved in favor of the accused. *Brown v. Commonwealth*, 29 Va. App. 199, 208 (1999) (citing *Gosling v. Commonwealth*, 7 Va. App. 642, 645 (1989)). "[A] prospective juror 'must be able to give [the accused] a fair and impartial trial. Upon this point nothing should be left to inference or doubt.'" *Bradbury v. Commonwealth*, 40 Va. App. 176, 180 (2003) (quoting *Wright v. Commonwealth*, 73 Va. (32 Gratt.) 941, 943 (1879)). If there is reasonable doubt whether the juror is impartial "that doubt is sufficient to insure his exclusion. For . . . it is not only important that justice should be impartially administered, but it should also flow through channels as free from suspicion as possible." *Brown*, 29 Va. App. at 207 (quoting *Breeden*, 217 Va. at 298 (citation omitted)).

Our precedent sets forth a detailed framework for analyzing decisions regarding juror selection and impartiality.[7] Recently, in *Northcraft*, we reconfirmed that when a circuit court

---

[7] While a series of recent opinions—*Northcraft*, 78 Va. App. 583, *Harvey*, 76 Va. App. 436, and *Keepers v. Commonwealth*, 72 Va. App. 17 (2020)—have upheld trial court decisions declining to strike jurors for cause, the principles enunciated in these rulings support the conclusion that reversal of the trial court's ruling is required here.

becomes involved in the questioning of a potential juror for rehabilitative purposes, "we must review the court's decision to retain [the juror] more carefully." 78 Va. App. at 590 (quoting *Harvey*, 76 Va. App. at 456). *Northcraft* explained that the circuit court judge is permitted—and often required—to "give basic instructions and ask general clarifying questions 'as necessary to determine the presence of bias.'" *Id.* (quoting *McGill v. Commonwealth*, 10 Va. App. 237, 243 (1990)). As the Court observed: "[i]t is not uncommon to discover during voir dire that prospective jurors have preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case." *Id.* at 588 (quoting *Lovos-Rivas*, 58 Va. App. at 61). These notions, once identified, must be examined and clarified to ensure impartiality. In *Northcraft*, after reviewing the full voir dire record, we concluded that the judge's questioning was "clarifying" in nature rather than "rehabilitative" and that the court's questions properly called upon the juror to explore and flesh out her prior statements that suggested bias.[8] *Id.* The juror's follow-up responses in *Northcraft* demonstrated that her initial reaction (which was adverse to the accused) was not a "fixed" or intractable view that rendered her incapable of following the court's instructions. *Id.* Accordingly, we upheld the trial court's decision not to strike the juror for cause. *Id.* at 591.

In *Keepers v. Commonwealth*, 72 Va. App. 17, 44-45 (2020), we similarly addressed a trial court's refusal to strike a prospective juror for cause. In that case, one prospective juror—Juror 40—expressed initial hesitation when answering questions about her ability to be fair and impartial. *Id.* at 31-32. We affirmed the circuit court's denial of a motion to strike Juror 40 for cause, concluding the statements the accused focused upon to demonstrate bias were taken out of context considering the entire voir dire. *Id.* at 45. We noted that the circuit court played no role

---

[8] Initially, the prospective juror acknowledged that the large number of felonies attributed to the accused suggested some wrongdoing on his part. *Northcraft*, 78 Va. App. at 585.

in the rehabilitation of Juror 40—instead relying on the Commonwealth's questioning—and that the full voir dire supported the trial court's ruling on the juror's impartiality. *Id.* at 46. Thus, we affirmed the circuit court. *Id.* at 47.

In *Harvey*, we again affirmed the circuit court's decision declining to strike a juror for cause after the juror expressed initial doubts about her ability to remain impartial due to pretrial publicity. 76 Va. App. at 457. We found that the trial judge was able to remain "relatively detached" during the voir dire, *id.* at 456 (quoting *McGill*, 10 Va. App. at 243), and that, based on the full voir dire, the trial court properly was "able to assess whether [the juror] was impermissibly biased or would be able to apply the law in the instructions after the presentation of all the evidence." *Id.*[9] While the accused suggested that several isolated juror comments illustrated bias, this Court analyzed the comments in the context of the entire voir dire and determined that the full record supported "the conclusion that the juror did not demonstrate a fixed bias and that the trial court's questioning and instruction constituted appropriate clarification, not improper rehabilitation." *Id.* at 457.

In *Harvey* and *Keepers*, we further noted the dangers inherent in the trial court, itself, asking suggestive questions to rehabilitate a prospective juror. In *Keepers* we cautioned: "When a juror initially indicates prejudice or a predisposition, the court may not direct the juror's rehabilitation." 72 Va. App. at 31 (citing *Gosling*, 7 Va. App. at 646-47). We added: "Evidence of the requisite qualifications for impartial service must emanate from the juror, unsuggested by leading questions." *Id.* (citations omitted); *see also Breeden*, 217 Va. at 300 (the taint of prejudice is unaffected by the fact that the prospective juror "merely gave the answers expected"

---

[9] In this setting we have observed: "The proper role for a trial judge is to remain detached from the issue of the juror's impartiality. The trial judge should rule on the propriety of counsel's questions and ask questions or instruct only where necessary to clarify and not for the purposes of rehabilitation." *McGill*, 10 Va. App. at 242-43.

in response to leading questions).  In *Bradbury* we further cautioned that "[w]hen asked by the court, a suggestive question produces an even more unreliable response . . . .  A juror's desire to 'say the right thing' or to please the authoritative figure of the judge, if encouraged, creates doubt about the candor of the juror's responses."  40 Va. App. at 181.  Thus, "[m]ere assent to a trial judge's questions . . . is not enough to rehabilitate a prospective juror who has initially demonstrated a prejudice."  *Harvey*, 76 Va. App. at 456 (quoting *Keepers*, 72 Va. App. at 456).

The process of proper juror examination, as outlined in these cases, reinforces principles that ensure a litigant's right to an impartial jury.  First, judicial neutrality is critical.  Courts must avoid leading, pressuring, or suggesting the "right answer" when questioning jurors.  *Id.* at 451; *Bradbury*, 40 Va. App. at 181.  Second, ambiguous or equivocal answers by jurors who have previously expressed bias are problematic; a prospective juror should be able to articulate impartiality—and equivocal responses to clarifying inquiries will generally be inadequate to overcome previously stated bias.  *Scott v. Commonwealth*, 58 Va. App. 265, 273 (2011); *see also Brown*, 29 Va. App. at 208 (finding prospective juror's "responses indicated a great degree of equivocation and created reasonable doubt about her fitness as a juror").  Third, the totality of circumstances controls, as opposed to focusing on answers in isolation.  A juror's entire voir dire exchange must ultimately reflect impartiality—and unresolved expressions of bias are not remedied by a single affirmative response to a leading question.  *See Scott*, 58 Va. App. at 273.  By the same token, one concerning juror response cannot be highlighted in isolation where it is fully explained and clarified elsewhere, and the record confirms the prospective juror can be impartial.  *Keepers*, 72 Va. App. at 35.  Fourth and finally, courts must err on the side of caution.  Because the defendant has a right to an impartial jury, all doubts as to a prospective juror's bias or impartiality must be resolved in the accused's favor.  *Bradbury*, 40 Va. App. at 180; *see also Northcraft*, 78 Va. App. at 591.

B.  Applying these Principles to the Case at Hand Necessitates Reversal

Here, Burton argues that the circuit court abused its discretion by denying his motion to strike Juror P. for cause because "[Juror P.] expressly admitted his bias against . . . Burton." Thus, Burton reasons, because a prior felony conviction was an essential element of the charge against Burton, Juror P.'s admission that he was biased against felons proved he could not be impartial. Burton suggests that Juror P.'s admission about his strong feelings regarding illegal gun ownership further confirmed that Juror P. would be unable to be impartial during this trial which specifically involved illegal gun ownership by a felon.

"The opinion entertained by a juror, which disqualifies him, is an opinion of that *fixed character* which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Lovos-Rivas*, 58 Va. App. at 61 (quoting *Justus v. Commonwealth*, 220 Va. 971, 976 (1980)). Further, "the juror must be free from prejudice against the accused. He must be able to give him a fair and impartial trial." *Wright*, 73 Va. (32 Gratt.) at 943. Errors in failing to strike prospective jurors "may arise from a lack of evidence to support the [circuit] court's decision and also from use of a selection procedure which does not result in a fair and impartial jury." *McGill*, 10 Va. App. at 241 (citing *Turner v. Commonwealth*, 221 Va. 513, 522 (1980)).

Reviewing Juror P.'s voir dire as a whole, here, confirms that there is insufficient support in the record to uphold the trial court's conclusion that Juror P. could be impartial considering the circumstances of this case. On three separate occasions Juror P. answered in the affirmative when he was asked whether he would be biased. First, when the Commonwealth asked whether any prospective jurors had "bias or prejudice" either "for or against the Commonwealth or the defendant[,]" Juror P. answered in the affirmative; and second when asked whether any jurors felt

they could not be fair to either party, Juror P. again answered in the affirmative.[10]  And, finally, when asked whether any jurors believed that, because Burton had a prior felony conviction, he was more likely to have committed the offenses in this case, Juror P. answered yes.  When pressed, Juror P. admitted to possessing a "slight bias."

When Juror P. was asked if he had any family members who had been victims of crime, Juror P. detailed his uncle's murder which resulted in the conviction of the murderer.  On the issue of firearms, a pivotal element in this particular case, Juror P. stated that he had "strong feelings" about the illegal possession of firearms, adding that he believed "illegal ownership of firearms or firearms that are illegally possessed are the fruit of our problems."[11]

The Commonwealth maintains that "none of [Juror P.'s] statements during voir dire demonstrated either fixed opinions or biases which rendered him incapable of being impartial."  We disagree.  Juror P. did not merely make an isolated statement that rendered his impartiality doubtful; instead, Juror P. repeatedly expressed preconceived notions unfavorable toward the accused.  Specifically concerning are Juror P.'s opinions on illegal gun ownership and his bias against Burton as a felon.  *See Educ. Books, Inc. v. Commonwealth*, 3 Va. App. 384, 387 (1986) ("Where voir dire examination discloses that the juror is leaning one way or the other and will not act with entire

---

[10] It is not clear from reading the transcript, but both the Commonwealth and Burton state on brief that Juror P. answered these questions by raising his hand.

[11] While the Commonwealth argues that the "fruit of our problems" is a vague term, Juror P.'s statement does not foster a sense of impartiality in a case dealing with illegal gun possession.  We note that there are instances where equivocal statements can be construed to establish a lack of bias, based on the circuit court's findings tied to observation of the prospective juror's demeanor or the inflection of their voice.  *See Weeks v. Commonwealth*, 248 Va. 460, 475 (1994) (noting the role of inflection in the juror's voice heard first-hand by trial judge); *Keepers*, 72 Va. App. at 44-45 (length of pause before answering question construed as honest consideration rather than uncertainty).  No such favorable interpretations of Juror P.'s statements are available to the Commonwealth here; Juror P. gave repeated indications of bias against the accused and this taint of prejudice was never adequately explained away or resolved.

impartiality, the juror is biased and must be removed." (citing *Winn v. Commonwealth*, 160 Va. 918, 924 (1933)).

Moreover, we recognize that "when a trial court itself becomes involved in the rehabilitation of a potential juror, we must review the court's decision to retain a person on the panel more carefully." *Bradbury*, 40 Va. App. at 181.[12]  While both the Commonwealth and the court attempted to rehabilitate Juror P., it was the circuit court's leading question after Juror P. conceded his bias against a convicted felon that was the stated basis for the denial of Burton's motion to strike.  Right after admitting that bias, the circuit court interjected in the voir dire and asked "[d]o you agree with following the Court's instructions in reaching a verdict?"  In response, Juror P. simply stated "I do."

The court's question here "suggested the answer that the court preferred to hear." *Bradbury*, 40 Va. App. at 182.  Of equal concern, Juror P.'s two-word affirmation failed to address any of the specific doubts raised by a multitude of his prior answers: his views on illegal gun ownership, his admitted bias against a convicted felon, his experience with his uncle as a victim of violent crime, and his repeated suggestion that he could not be fair to both parties. Instead, the court's inquiry presented a very general question addressing none of those specific issues.  *See Martin v. Commonwealth*, 221 Va. 436, 444 (1980) ("Proof that a prospective juror is impartial and fair, we stated, "'should come from him and not be based on his mere assent to persuasive suggestions.'"" (quoting *Breeden*, 217 Va. at 300)).  In this exchange Juror P. was not

---

[12] Burton argues on appeal that the conviction should be overturned because the circuit court itself improperly undertook to rehabilitate Juror P.  The Commonwealth contends that Burton failed to assert this argument during his motion to strike Juror P. for cause, bringing the argument up for the first time in his motion to set aside the verdict.  *See* Rule 5A:18.  Because we reverse on other grounds, we will not address the merits of this issue or the Commonwealth's waiver claims.  *See* C*ommonwealth v. White*, 293 Va. 411, 419 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

asked to explain any of his problematic answers. Indeed, where a prospective juror's bias against the accused remains apparent and unresolved on the record, "however willing the juror might be to trust himself, the law will not trust him." *Breeden*, 217 Va. at 298 (citations omitted).[13]

In light of the totality of his responses throughout the voir dire, this one leading question by the circuit court in an attempt to rehabilitate Juror P. does "not create confidence in this juror's ability to sit impartially and fairly in judgment on appellant." *Bradbury*, 40 Va. App. at 183 (citing *Parsons v. Commonwealth*, 138 Va. 764, 773 (1924)).[14]

---

[13] The Commonwealth also suggests that Burton did not sufficiently preserve his objections to Juror P.'s bias. Burton moved to strike for cause, listing a variety of grounds. When the Commonwealth opposed Burton's motion to strike, it was on the basis that Juror P. purportedly showed he could "be fair and impartial." The trial judge (referring to his rehabilitation of the witness after Juror P. conceded a "slight bias" against the accused as a felon) responded, "Yes, that's why I asked him the question." This was a candid acknowledgement that the court was well aware that Juror P.'s partiality was challenged. When the circuit court rejected Burton's motion, it reiterated that the ruling was based on the fact that the prospective juror "answered my question and said he would follow the law." Even then, defense counsel challenged the effectiveness of Juror P.'s brief answer, stating, "just because someone says they are going to agree with it [follow the law], . . . it doesn't mean they actually can." We disagree with the Commonwealth's waiver argument because the record here demonstrates that the trial court was well aware of—and addressed—the issues Burton now raises on appeal. *See Helms v. Manspile*, 277 Va. 1, 7 (2009) (where the trial court is "well aware" of a litigant's position and the position is not waived, it is preserved); Code § 8.01-384; *see also Everett v. Carome*, 65 Va. App. 177, 184 (2015) (finding no waiver where the "trial court could not have been in doubt about what husband's arguments or positions were").

[14] As we noted in *Scott*, where a prospective juror expressed reservations about the accused's presumption of innocence, there is certainly nothing inappropriate about asking a juror if they will follow the law; however, a simple affirmative response, without more, cannot "serve to fully rehabilitate" previously expressed prejudice. 58 Va. App. at 273-74. In *Scott*, although the prospective juror, Brightwell, answered affirmatively to a leading question that he could follow the law, we reversed the trial court's ruling that the juror was unbiased. We stated: "Nothing in Brightwell's affirmative answer to this question explains how he resolved the contradiction between his professed problem with the presumption of innocence and his ability to follow the law." *Id.* at 274. Thus, the prospective juror "should have been struck for cause as he was not shown to be free from prejudice." *Id.* The same is true here.

In sum, Juror P. made numerous statements which cast doubt on whether he could be impartial, and these concerns regarding Juror P.'s bias were never properly resolved or addressed. Again, "all doubts about the fitness of a juror to serve must be resolved in favor of the accused." *Brown*, 29 Va. App. at 208; *see also Northcraft*, 78 Va. App. at 587 ("By ancient rule, any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused." (quoting *Breeden*, 217 Va. at 298)). "It is a trial court's responsibility to ensure that jurors are free from bias." *Grimaldo v. Commonwealth*, 82 Va. App. 304, 317 (2024) (quoting *Goodwin v. Commonwealth*, 71 Va. App. 125, 135 (2019)). We find that the circuit court erred in denying Burton's motion to strike Juror P. from the jury panel for cause. Moreover, forcing a criminal defendant to exercise a peremptory strike to remove an unqualified juror is reversible error. *Breeden*, 217 Va. at 300. Thus, we reverse the judgment of the circuit court.

II. The Evidence was Sufficient to Prove Burton Possessed a Firearm

Burton made several other arguments on appeal. But because we determine the circuit court erred when it failed to strike Juror P. for cause, we do not reach Burton's additional assignments of error.[15] However, before remanding the case for a new trial, we must address Burton's argument that the Commonwealth failed to present sufficient evidence that he possessed a firearm: "If the evidence adduced at trial was insufficient to convict [Burton], he is entitled to an acquittal; if he is so entitled, a remand for retrial would violate the Constitution's prohibition against double jeopardy." *Parsons v. Commonwealth*, 32 Va. App. 576, 581 (2000). "[A] full sufficiency analysis is required to satisfy the mandate of the Double Jeopardy Clause of the federal Constitution." *Id.* (citing *Burks v. United States*, 437 U.S. 1 (1978)); *see also Timbers v. Commonwealth*, 28 Va. App. 187, 202 (1998); *see also Lockhart v. United States*, 488 U.S. 33,

---

[15] *See White*, 293 Va. at 419 ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Swann*, 290 Va. at 196)).

41 (1988) ("[A] reversal for insufficiency of the evidence should be treated no differently than a trial court's granting a judgment of acquittal at the close of all the evidence.").

On appeal, Burton argues the circuit court erred when it denied his motion to strike because the Commonwealth's evidence, particularly in relation to whether the object he possessed was a firearm, was insufficient. "A motion to strike challenges whether the evidence is sufficient to submit the case to the jury." *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013)). As a result, Burton's challenge raises the questions of whether the evidence adduced sufficiently presented "a *prima facie* case [of the charges] for consideration" by the jury. *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)). "What the elements of the offense are is a question of law that we review de novo." *Linnon*, 287 Va. at 98 (quoting *Lawlor*, 285 Va. at 223). "Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." *Id.* (quoting *Lawlor*, 285 Va. at 223-24). "In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom." *Id.* (quoting *Lawlor*, 285 Va. at 224). "After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Lawlor*, 285 Va. at 224). "In sum, if there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial." *Id.* (quoting *Lawlor*, 285 Va. at 224).

Here, viewing the evidence in the light most favorable to the Commonwealth, and granting to it all reasonable inferences fairly deducible therefrom, we conclude the evidence was sufficient to support Burton's conviction. The jury was presented with several pieces of

evidence that could have led a rational factfinder to conclude Burton was in possession of a firearm. Particularly the video exchange between Burton and Christian on Christian's front porch and in the yard. The video shows that, during that interaction, Burton repeatedly "flashed" what reasonable jurors could conclude was a firearm in his waistband. Burton's actions also imply that the item he possessed was a handgun. Burton flashes the object in the video in a threatening manner, and the jury could see all of this behavior and the entire exchange. The jury also heard Christian's testimony that he believed Burton possessed a firearm as well as Burton's suggestive statements to police after the incident. This record provides sufficient circumstantial evidence to support Burton's conviction.

Because the evidence was sufficient to support a finding of guilt, a retrial of the case will not violate the Double Jeopardy Clause. Indeed, "[p]ermitting retrial in this instance is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed; rather, it serves the interest of the defendant by affording him an opportunity to 'obtai[n] a fair readjudication of his guilt free from error.'" *Lockhart*, 488 U.S. at 42 (quoting *Burks*, 437 U.S. at 15).

CONCLUSION

For these reasons, the circuit court's judgment is reversed, and the case is remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*